**Julio MORET, Appellant,**

v.

**Lyle KARN, District Director of the Pennsylvania District of the Immigration and Naturalization Service, Appellee.**

**No. 83–1905.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Aug. 7, 1984.

Decided Oct. 24, 1984.

Margaret A. Lenzi, Delaware County Legal Assistance Ass'n, Chester, Pa., for appellant.

Alexander Ewing, Jr., Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before SEITZ, GIBBONS and HUNTER, Circuit Judges.

### OPINION OF THE COURT

SEITZ, Circuit Judge.

Julio Moret, a 19-year-old Cuban national, presently confined at the Atlanta Federal Penitentiary at the request of the Immigration and Naturalization Service ("INS"), appeals from an order of the district court denying his petition for habeas corpus relief. Jurisdiction for this appeal exists under 28 U.S.C. § 1291.

### I.

Moret is one of approximately 125,000 "Mariel Cubans"[1] who early in 1980 arrived in the United States aboard a flotilla of small boats. Like many of the Mariel Cubans, Moret came to this country without a visa or other travel documents, having been released from prison just prior to his departure from Cuba.

Faced with the large influx of Cuban refugees, the President authorized a special immigration status of "Cuban/Hatian entrants (status pending)." Persons in that status are eligible for parole from INS custody. 8 U.S.C. § 1182(d)(5) (1982). Parole does not grant an alien legal residence in the United States. It does, however, allow for the temporary harborage in this country of an otherwise inadmissible alien. Those paroled are provided with sponsors to facilitate their assimilation in the United States.

Upon his arrival in Florida, Moret was processed by the INS and released on parole. Since his release in August of 1980, Moret has been transferred among a number of different sponsors and, for a variety of reasons, his parole has been revoked and restored on several occasions.

His last placement was with the Vision Quest program in Harrisburg, Pennsylvania. This placement was terminated in April of 1983 when Moret left the program without permission. On September 8, 1983, the INS notified Moret by letter that his parole been revoked "as a result of [his] failure to maintain the conditions of [his] resettlement." App. p. 178. Moret was immediately taken into custody by the INS District Director in Pennsylvania. He has since been transferred to his present location at the federal penitentiary in Atlanta, Georgia.

Moret brought this petition for habeas corpus relief in the United States District Court for the Eastern District of Pennsylvania. The court denied such relief but ordered that a prompt exclusionary hearing be held in the Philadelphia area. Such a hearing was held on October 21, 1983, and it was determined that Moret could be ex-

---

**1.** The port of departure for most of these aliens was Mariel, Cuba; hence the name "Mariel Cubans."

cluded from the United States because he was not in possession of the proper entry papers.

## II.

### A. *Judicial Review*

An alien's parole status is authorized by 8 U.S.C. § 1182(d)(5)(A) (1982), which provides:

The Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States....

The regulation under this statute provides that an alien's parole may be revoked "when in the opinion of the district director in charge of the area in which the alien is located neither emergency nor public interest warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(d) (1984).

■ Unquestionably, the Attorney General has broad discretion to grant or deny parole. *See Rodriguez-Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir.1981) (Attorney General has discretion to deny parole to excludable aliens convicted of crimes of moral turpitude). However, while this discretion is considerable, it is not unlimited. Rather, like other agency actions, parole-related decisions may be reviewed under the judicial review provisions of the Administrative Procedure Act (the "A.P.A."), 5 U.S.C. §§ 701–706 (1982).

Accordingly, the appropriate standard of review in such cases is whether the agency's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Federal courts have regularly reviewed § 1182(d)(5) parole determinations for abuse of discretion. *See Jean v. Nelson,* 727 F.2d 957, 975–77 (11th Cir.1984) (en banc); *Palma v. Verdeyen,* 676 F.2d 100, 104–05 (4th Cir.1982); *United States v. Lagarda-Aguilar,* 617 F.2d 527, 528 (9th Cir.1980).

■ The government contends that a federal court may not review the merits of the INS decision to revoke Moret's parole. This contention, even if true, would not preclude this court from deciding whether the agency had exercised its authority in an arbitrary and capricious manner.[2] This standard of review is consistent with the legislative history of the Immigration and Nationality Act of 1952, in which the grant of parole authority was first included. *See* H.R.Rep. No. 1365, 82d Cong., 2d Sess., *reprinted in* 1952 U.S.Code Cong. & Ad. News 1653, 1654 (indicating that if agencies "transcend limits of authority or abuse discretion reposed in them, their judgment is ... open to challenge or review by courts").

### B. *Parole Revocation*

Moret contends that the termination of his parole was improper because the INS failed to comply with its own internal procedures governing the revocation of parole for Mariel Cubans. These procedures, announced on May 17, 1982, allow for the revocation of a Mariel Cuban's parole when either the alien has been convicted in the United States of a felony or serious misdemeanor, or when the INS District Director determines that the alien presents a clear and imminent danger to the community or himself. The INS official responsible for implementing these guidelines has emphasized that in non-criminal cases, the policy of the INS is to revoke parole *"only* when the alien is deemed to be a clear and immi-

---

**2.** Our limited inquiry here does not require us to consider the nature and extent of an alien's constitutional rights in parole-related proceedings. The Eleventh Circuit has recently held that the revocation of an alien's parole does not amount to a constitutional infringement because the alien has no protectible liberty interest in parole. *Fernandez-Roque v. Smith,* 734 F.2d 576 (11th Cir.1984). Although this holding would appear to suggest that the INS could terminate an alien's parole without affording any procedural protections, once such procedures are in place, we believe that an agency's failure to follow its own directives would be actionable. 5 U.S.C. § 706(2)(A).

nent danger to the community or to himself." Declaration of John A. Simon, Supp. App. p. 2a (emphasis added).

The government maintains that supplemental wire instructions, issued by the INS on March 1, 1983, specifically allow for the revocation of parole of a Mariel Cuban who violates the conditions of his sponsoring program. We find, however, that these parole guidelines are inapplicable on their face to Moret. The guidelines apply only to those Mariel Cubans paroled from the Atlanta penitentiary. Prior to his present incarceration, Moret had never, so far as the record discloses, been to the Atlanta facility, or to any other federal penitentiary. Moreover, these guidelines indicate that a Mariel Cuban must, before being paroled, sign a special agreement containing the conditions of his parole. There is no evidence that Moret was ever shown, or that he ever signed, a form agreeing to the conditions for resettlement in the Vision Quest program.

Thus, in the present case, if the revocation is to be upheld, there must be an explicit finding that Moret posed a "clear and imminent danger" to society. There has been no such finding. The only determination made by the INS was that Moret had failed to abide by the conditions of his resettlement program.

■ The government argues, however, that this court may sustain the agency's determination because the administrative record supports a finding—though not explicitly made—that Moret posed a danger to the community. The record does disclose that Moret is a somewhat unstable and aggressive young man. However, this court is not free to uphold the agency's determination on the basis of a post-hoc rationalization by the government. *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Neither may this court supply its own justification for the decision of the INS. As Professor Davis concludes:

> Even if the evidence in the record, combined with the reviewing court's understanding of the law, is enough to support the order, the court may not uphold the order unless it is sustainable on the agency's findings and for the reasons stated by the agency.

K. Davis, Administrative Law Treatise § 14:29 (1980). Hence, regardless of whether the administrative record would sustain a finding that Moret was a clear and imminent danger to the community, the fact remains that no such determination has been made by the INS. This fact is dispositive. For as Supreme Court precedent makes clear, a court must evaluate the propriety of an agency action solely on the grounds invoked by the agency in its initial determination. If, as in this case, those grounds are inadequate or improper, the agency action must be set aside. *See S.E.C. v. Chenery Corp. (Chenery II)*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

■ An agency abuses its discretion if it fails to follow its own regulations and procedures. *Shepherd v. Merit Systems Protection Board*, 652 F.2d 1040 (D.C.Cir. 1981). *See also Piper v. Crosland*, 519 F.Supp. 962 (E.D.N.Y.1981) (INS abused its discretion in denying alien's application for stay of deportation because agency failed to follow internal guidelines requiring a finding that application was "frivolous" or that "substantial adverse factors" disfavored a stay).

■ The district court did not consider whether the INS actions were arbitrary, capricious or an abuse of discretion because it apparently felt that Moret's concerns would be addressed at the INS exclusion hearing. We believe that the district court erred in declining to consider this issue. Because the agency's own revocation policies do not allow for a revocation

of parole without a finding of a clear and imminent danger and because there was no such finding in this case, we hold that the termination of Moret's parole was an abuse of discretion.[3]

### III.

The order of the district court denying Moret's motion for habeas corpus relief will be reversed with instructions to the district court to order the writ to issue within 30 days unless the Immigration and Naturalization Service institutes and completes new parole revocation proceedings consistent with its governing statutes, regulations and policies.

---

**3.** The government argues that the abuse of discretion standard of review in the case of a discretionary parole decision is extremely narrow and limited to a consideration of whether the reasons articulated for the INS action are "facially legitimate and bona fide." (citing *Jean v. Nelson,* 727 F.2d 957, 977 (11th Cir.1984) (en banc)). However, even assuming that such a stringent standard were appropriate, the revocation of Moret's parole is unjustified. Under the applicable internal policy guideline, the violation of a sponsor's condition is not a facially legitimate and bona fide basis for revoking the parole of a Mariel Cuban.