**In the Matter of the Application of Jean-Baptiste Edvard PIERRE, For a Writ of Habeas Corpus.**

**Jean-Baptiste Edvard PIERRE, Petitioner,**

**v.**

**Lyle KARN, as District Director of the Philadelphia District of the Immigration and Naturalization Service, Respondent.**

**Civ. A. No. 85–0216.**

United States District Court, E.D. Pennsylvania.

April 2, 1985.

Justin T. Loughry, Michael Carroll, Philadelphia, Pa., for petitioner.

Alexander Ewing, Asst. U.S. Atty., Philadelphia, Pa., for respondent.

## MEMORANDUM AND ORDER

KATZ, District Judge.

Petitioner, a Haitian, seeks a Writ of Habeas Corpus for release from detention pending the Government's consideration of his application for asylum in the United States. A hearing on this Petition was held on March 28, 1985. The Petition For Writ of Habeas Corpus will be Denied with leave to renew if the application for asylum is not resolved expeditiously.

On January 19, 1983, petitioner left Haiti and arrived at Philadelphia International Airport. Petitioner entered this country with false documentation and used forms with a fictitious name. Since the time of his arrival petitioner has been incarcerated. On January 24, 1983, petitioner submitted a Request For Asylum in the United States to the Immigration and Naturalization Service. At an exclusion hearing held on February 24, 1984, petitioner conceded excludability and pressed his claim for asylum. This hearing was adjourned to May 26,

1983 in order for the United States Department of State to analyze the asylum claim. At the conclusion of the May 26 hearing, the Immigration Judge denied the request for asylum and ordered petitioner excluded and deported. In August, 1983, the transcript of the May 26 exclusion hearing was made available to petitioner. On January 4, 1984, petitioner was notified that as soon as it received the record file in this case, the Board of Immigration Appeals would consider his appeal. On February 17, 1984, the Board of Immigration Appeals responding to objections from both sides regarding the quality of the transcript remanded the record in order to give the parties an opportunity to agree on omissions and corrections.

On April 3, 1984, counsel for petitioner moved for a *de novo* hearing on the ground that the transcript was defective. The Immigration Judge denied this as well as two additional requests for *de novo* hearings on May 16, 1984 and September 26, 1984. On November 7, 1984, the Board of Immigration Appeals remanded the case to the Immigration Court for a new hearing on the ground that the record was inadequate. This hearing was held February 21, 1985. To date, no decision has been rendered by the Immigration Court. Petitioner's requests for parole pending a resolution of his application for asylum were denied on May 24, 1984 and June 15, 1984.

■ The authority to promulgate and implement laws and regulations regarding the admission of aliens to this nation has long been committed to the legislative and executive branches of government. *See Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982). Under these laws an alien may under certain circumstances be paroled pending a resolution of his or her request for admission. The Immigration and Nationality Act provides that "[t]he Attorney General may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the

United States...." 8 U.S.C. § 1182(d)(5)(A). The Immigration and Naturalization Service has promulgated regulations to guide the district director in making a parole decision. The parole of certain groups of aliens, including those with close family relatives in the United States, is usually deemed to be "strictly in the public interest" as long as the applicant presents "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(a)(2).

In his petition for a writ of habeas corpus, petitioner alleges that his continued incarceration violates his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution in that the government's own procedures and administrative errors have delayed the decision on his application for asylum. He further argues that there is no rational reason for his continued detention.

Whether non-resident aliens who are awaiting a final decision on admission or an order of deportation are entitled to constitutional rights is a question that has divided this nation's judiciary. *See Jean v. Nelson,* 727 F.2d 957 (11th Cir.), *cert. granted,* — U.S. —, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984) (non-resident aliens may not challenge parole decision on fifth amendment grounds); *Rodriguez-Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir.1981) (non-resident aliens entitled to due process guarantees of fifth amendment pending deportation). This Court need not resolve this issue of the rights of aliens. Even if non-resident aliens were entitled to protection under the United States Constitution, I find that the delays experienced by the petitioner, while substantial, violate no constitutional protection at this point in time.

■ The fact that an individual's incarceration has been extended on account of delays prior to resolution of the matter for which he is in custody does not necessarily entitle that person to a writ ot habeas corpus. To the contrary, in determining whether a constitutional violation has taken place, a reviewing court must examine several factors including the length of the delay, the reasons for the delay, and what

prejudice the delay has caused the petitioner.[1]

Upon arriving in this country in January, 1983, the petitioner initially received prompt consideration and resolution of his application for asylum. In May 1983 following two hearings he was denied asylum by the District Director. The delays petitioner experienced in receiving review of this initial decision on exclusion were largely a result of faulty transcription of the proceedings below and the inability of the parties to reconstruct transcript omissions. Following the November 1984 ruling of the Board of Immigration Appeals, petitioner's application for asylum was heard for a second time by the Immigration Court. Petitioner has failed to show how the delays in resolving his application for asylum prejudiced his chances for success in that proceeding. I find that although the petitioner has suffered hardships as a result of his continuing incarceration, the length of said incarceration, alone, does not rise to the level of a constitutional violation. This case is distinguishable from *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir.1981), where the Tenth Circuit held an incarcerated alien's due process rights had been violated. In *Rodriquez-Fernandez* the petitioner had already received a final determination that he would not be admitted into the United States and was being held indefinitely pending deportation to a country that refused to allow him to return. In this case, petitioner's incarceration is not of indefinite duration; he remains incarcerated only until a final determination of his application for asylum has been rendered. Thereafter, he will be free to live in the United States or he will be deported.

I further find that the District Director has not acted contrary to the law by denying parole to the petitioner. The Attorney General has broad discretion to grant or deny parole to an alien pending a decision on his application for admission to this country. *See* 8 U.S.C. § 1182(d)(5)(A). The proper standard for judicial review of parole decisions is "whether the agency's decision is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *See Moret v. Karn*, 746 F.2d 989, 991 (3d Cir.1984). A judge may not, however, substitute his judgment for that of the administrative officer.

Under 8 C.F.R. § 212.5 the government may deny parole to an alien who otherwise would qualify if that person presents a risk of absconding. In his May 24, 1984, letter denying parole, the district director concluded that due to the petitioner's lack of family ties in this country he would be "very likely" to abscond if parole were granted. This conclusion was buttressed, in the District Director's opinion, by the fact that the petitioner possessed and used documents with a false name upon his arrival in this country. Based upon an independent analysis of the administrative record, this court cannot say that the district director abused his discretion, in finding that the petitioner would likely

---

1. These factors are similar to those considered by a court in reviewing whether a defendant's Sixth Amendment right to a speedy trial has been violated. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (setting forth four pronged balancing test).

In addition, cases regarding the due process rights of pretrial detainees provide a useful methodology for determining whether any Fifth Amendment rights an alien arguably may possess have been violated by his detention pending resolution of his application for asylum. *Cf.* Note, *The Indefinite Detention of Excluded Aliens: Statutory and Constitutional Justifications and Limitations*, 82 Mich.L.Rev. 61, 79 (1983). In order to decide whether a pretrial detainee's constitutional rights have been violated, a court must look to whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. The detention will violate the individual's constitutional rights if it is for the purpose of punishment or, if it is excessive in relation to the legitimate governmental purpose it furthers. *See Bell v. Wolfish*, 441 U.S. 520, 537–39, 99 S.Ct. 1861, 1873–74, 60 L.Ed.2d 447 (1979). I find that the detention of the petitioner pending a resolution of his request for asylum is not punitive but rather furthers the public interest in preventing persons who may be excludable from vanishing. I further find that the length of the petitioner's detention, while substantial, is not yet excessive when weighed against the important reasons for that detention.

flee if paroled. Therefore, the district director's decision to deny parole will not be overturned.

Although this Court has found that the decision of the district director to deny parole was not an abuse of discretion and that the delay in resolving petitioner's application for asylum did not violate the United States Constitution, it should be emphasized that the Government may not drag out its decision making indefinitely. Regardless of whether the petitioner is entitled to those constitutional rights enjoyed by American citizens, Congress has mandated a minimum amount of due process by specifying the procedures under which an alien may apply for asylum. *See Jean v. Nelson,* 727 F.2d 957, 968, *cert. granted,* —— U.S. ——, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984). The procedures set forth by Congress for determining whether an individual may gain asylum in this nation were designed to create an orderly system for determining which claims for asylum are meritorious. This Court expects the Government to move expeditiously in resolving whether the petitioner is entitled to asylum. Although this Court denies Mr. Pierre's Petition For A Writ of Habeas Corpus, it grants him leave to renew his Petition if his claim to asylum is not resolved expeditiously. Detention pending deportation may be justified, in the exercise of discretion, as a necessary, temporary measure. If detention becomes an indefinite imprisonment, unrelated to expeditious proceedings to exclude or deport, then it takes on the aspect of punishment which this Court will not tolerate. While the government may have the right to exclude or deport the Petitioner, it does not have the right to keep him locked up indefinitely. The Court expects Mr. Pierre's case to move expeditiously.