887 F.2d 723
 CONNAIRE, INC., Petitioner,
v.
SECRETARY, UNITED STATES DEPARTMENT OF TRANSPORTATION
(87-3001); Administrator, Federal Aviation
Administration and the National
Transportation Safety Board
(88-3935), Respondents.
 Nos. 87-3001, 88-3935.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 15, 1989.
Decided Oct. 19, 1989.
As Amended Jan. 4, 1990.
 
 Thomas H. Forrester and G. Rhea Bucy, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., for petitioner.
 Mardi Ruth Thompson, R.R. Hagadone, Regional Counsel, Federal Aviation Admin., Mardi Ruth Thompson, Atty., Atlanta, Ga., J.E. Murdock, III, Chief Counsel, Federal Aviation Admin., Office of Gen. Counsel, and Joseph A. Conte (argued), Washington, D.C., for respondents.
 Before WELLFORD, GUY and BOGGS, Circuit Judges.
 BOGGS, Circuit Judge.
 
 
 1
 ConnAire, Inc. (ConnAire), a small commercial air carrier, appeals the decision of the National Transportation Safety Board (the Board) upholding a 120-day suspension of ConnAire's Air Carrier Operating Certificate, originally imposed by the Federal Aviation Administration (FAA). ConnAire contends that the FAA abused its discretion by originally revoking ConnAire's certificate in violation of its own guidelines and that the Board did not afford sufficient review of the FAA's decision. We find that neither the FAA nor the Board abused its discretion and therefore affirm.
 
 
 2
 * ConnAire is a commercial aviation company based in Nashville, Tennessee. ConnAire has declared bankruptcy since this litigation began. The central event of this case took place on December 30, 1986, when the FAA issued an emergency order immediately revoking ConnAire's Air Carrier Operating Certificate. The FAA alleged that ConnAire was guilty of violating several federal aviation regulations. These violations, the FAA maintained, resulted in a serious threat to public safety.
 
 
 3
 The most important of the alleged violations were: (1) ConnAire pilots, including the president of the company, were flying airplanes for which they did not have the appropriate pilot ratings or certifications; (2) ConnAire did not keep accurate flight time or duty records and allowed pilots to exceed regulatory limits on time in flight and on duty; (3) ConnAire flew planes for which the company did not have complete operating information; and (4) generally poor record keeping on the part of the company, especially concerning maintenance records.
 
 
 4
 Because there is no administrative authority to obtain a stay of an emergency order, ConnAire immediately sought a stay of the revocation order from this court. On January 7, 1987, Judge Boggs denied the motion for a stay but allowed an expedited appeal if the administrative review provided by statute proved insufficient. On January 14, 15 and 16, a hearing was held before an ALJ of the Board. Immediately after the hearing, the ALJ found that there was substantial evidence supporting many of the allegations of violations made by the FAA. The ALJ, however, concluded that ConnAire's violations, while serious, did not merit the penalty of revocation. The ALJ ordered that ConnAire's certificate be suspended for 120 days. The FAA shortly thereafter withdrew the "emergency" nature of its revocation order and returned ConnAire's certification pending appeal. The suspension ordered by the ALJ was also stayed pending appeal to the Board.
 
 
 5
 In April 1988, the Board unanimously held that there was substantial evidence supporting the findings of the ALJ as regards to ConnAire's violations. The Board, however, differed as to the appropriate penalty, with two members voting to uphold the 120-day suspension, one voting to impose no suspension, and one voting to revoke the certificate entirely. As there was no majority view, the ALJ's decision was left undisturbed, upholding the 120-day suspension. ConnAire then filed this appeal. While this appeal was pending, ConnAire served out its suspension.
 
 II
 
 6
 The respondents first contend that this appeal is moot. They contend that because ConnAire has already served its suspension there is nothing to appeal, and there is thus no case or controversy. In the alternative, the respondents argue that the case is moot at least as to ConnAire's request for a decision prohibiting any future punishment against it, as no further action is contemplated against the company.
 
 
 7
 In support of their argument, the respondents cite Westmoreland v. National Transportation Safety Board, 833 F.2d 1461 (11th Cir.1987), in which the Eleventh Circuit held that, in a case where the FAA revoked Westmoreland's pilot's licence and the license was later returned, the action was moot. The court in Westmoreland relied on the principle that federal courts do not have jurisdiction under Article III of the Constitution to "decide questions rendered moot by reason of intervening events." Id. at 1462. The parties must have a legally cognizable interest in the outcome of the litigation. Id. at 1463.
 
 
 8
 Westmoreland argued that she would be hurt by the suspension if she had to disclose the suspension when trying to get a job. The court found that the possibility of this harm was too speculative to create a cognizable interest. The respondents here argue that this case is similar to Westmoreland. The serving of the suspension was an intervening event rendering any challenge to the suspension moot.
 
 
 9
 The defendants also argue, as did the court in Westmoreland, that this kind of action does not fit under "capable of repetition, yet evading review" exception to the mootness doctrine because it did not meet the two requirements for invoking that exception: (1) an action concerning an event whose existence is too short to be fully litigated prior to its cessation and (2) a reasonable expectation that the same complaining party would be subject the same action. Ibid., citing Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975). The defendants contend that it is unreasonable to assume that ConnAire would be subject to the same discipline. Finally, as to the argument that many suspensions will be over before appellate review can be obtained, the defendants point out that ConnAire could have requested a stay from the Board and that the stays are freely given. Such a stay was not requested.
 
 
 10
 ConnAire responds that the existence of this suspension on its record could have real future effects that are not the product of mere speculation. For example, any future penalty the FAA imposes against ConnAire for other violations could be enhanced because of a previous suspension. See Public Media Center v. F.C.C., 587 F.2d 1322, 1328 (D.C.Cir.1978) (fact that record of violation could be used in future FCC proceedings was a factor against holding moot an appeal of refusal to find that radio stations committed fairness doctrine violations). In addition, a decision here could affect future litigation arising out of the government's actions in this case. See British Caledonian Airways v. Bond, 665 F.2d 1153, 1158 n. 2 (D.C.Cir.1981) (the possibility that winning party in litigation could use judgment to obtain money damages prevented court from holding case moot).
 
 
 11
 Finally, ConnAire argues that it is unreasonable to expect litigants to have to rely on stays from the Board in order to appeal the Board's own orders. The Board could, if it wished, then simply deny all stays and preclude judicial review on many suspensions. Also, ConnAire argues, the subjects of sanctions often want to serve suspensions as quickly as possible, even while pursuing an appeal.
 
 
 12
 We agree with ConnAire. There is more of a concrete, threatened injury here than in Westmoreland in that it is reasonably forseeable that the FAA may have future dealings with the airline and that a suspension on ConnAire's record would likely affect its relationship with the regulatory agency. This forseeable harm is far different than speculation about future jobs. In addition, short suspensions would elude review under the respondents' framework unless the Board itself granted the right to a stay. There must be a way to appeal short suspensions without the sufferance of the Board. Given the reasonableness of the proposition that the affairs of companies like ConnAire will again be scrutinized by the agency, it seems clear that this short suspension situation comes quite close to the "capable of repetition, evading review" scenario. See Bond, 665 F.2d at 1158.
 
 
 13
 Under these circumstances, we decline to find the entire case moot. We do, however, find moot ConnAire's request that this court hold that it cannot be the subject of further discipline. As ConnAire has fully served out its suspension, the record on this set of violations is closed, requiring no further findings.
 
 III
 
 14
 ConnAire's first objection to the Board's decision is that it erroneously failed to hold that the FAA abused its discretion by revoking ConnAire's certificate in violation of its own guidelines. ConnAire cites several cases holding, in other contexts, that administrative agencies are required to follow their promulgated regulations. For example, in Moret v. Karn, 746 F.2d 989, 992 (3d Cir.1984), the Third Circuit held that one of the Mariel Cuban prisoners could not have his parole revoked because the Immigration and Naturalization Service did not follow its own internal guidelines, stating that "An agency abuses its discretion if it fails to follow its own regulations and procedures."
 
 
 15
 ConnAire then looks to former FAA Order 2150.3 (the order has since been revised), which was intended to govern the FAA's program of ensuring compliance with and enforcement of its regulations. ConnAire alleges that the FAA acted contrary to these guidelines in revoking its certificate, leading to disastrous consequences for ConnAire. Sec. 205(c)(1) of the Order states:
 
 
 16
 Revocation of a certificate or a rating should be sought in all cases where there is a lack of capability or other deficiency incapable of immediate correction; in cases where the certificate holder has demonstrated by repeated offenses an unwillingness or inability to comply with the principles of air safety; and in cases where the continued exercise by the individual of the privileges of the certificate would be detrimental to the public interest. For example, revocation should be sought in cases where an aircraft is used for smuggling or transporting narcotics, or where there is falsification of records.
 
 
 17
 Sec. 205(c)(2) states: "In cases involving organizations, revocation should be sought where their conduct demonstrates a lack of qualification; i.e., deliberate and flagrant violations; falsification of records." Sec. 205(a)(1) states, in part: "Civil penalties may also be initiated in any case where normally a suspension would be manifestly unfair or create an undue hardship and is not required for aviation safety. However, when there is a serious ongoing safety violation involved, and immediate corrective action cannot be obtained, certificate action should be considered notwithstanding hardship to the certificate holder or disruption to public service."
 
 
 18
 ConnAire argues that these guidelines were not followed in its case, and, therefore, the FAA abused its discretion in revoking its certificate. For example, ConnAire contends that its certificate should not have been revoked under Sec. 205(c)(1). It showed no deficiency incapable of correction; in fact, the ALJ found that it had already made great progress in fixing the defects previously found. The ALJ specifically found that ConnAire had the capability of being a competent airline. These findings are also relevant to Sec. 205(c)(2). ConnAire showed a willingness to correct its defects, and the ALJ, while disturbed by some of ConnAire's practices, found that the airline was not run in an unsafe manner.
 
 
 19
 The airline reads the last section of Sec. 205(c)(1), allowing the agency to revoke certificates used in a way detrimental to the public interest, as permitting the agency to withdraw certificates only from smugglers, drug dealers, and falsifiers of records. It argues that it is not any of these things. This section, ConnAire argues, is not a general grant of power to the agency to revoke certificates when it thinks it would be in the public interest. Similarly, ConnAire reads Sec. 205(c)(2), as requiring revocation of an organization's certificate only where there are deliberate and flagrant violations or the falsification of records. The record, the petitioner argues, shows that ConnAire is guilty of neither of these things, especially given the ALJ's statement that he did not "think there is any pervasive disregard of the FAA regulations on the part of the company."
 
 
 20
 Finally, the airline argues that its dire economic situation should have been considered under Sec. 205(a)(2). A fair evaluation of its situation and its breaches of regulations should have, under the provisions of this order, led to, at most, the levying of civil sanctions, not the destructive revocation. The public safety, ConnAire concludes, was never at stake.
 
 
 21
 We are sympathetic to the idea that an agency should adhere to its promulgated guidelines, provided that those guidelines are sufficiently specific and prominently promulgated so as to engender reliance among the public. It is also clear, however, that the Board or the court cannot hold the FAA to its internal guidelines if those guidelines are inconsistent with the agency's statutory mandate. If the FAA has the statutory authority to do what it did and the guidelines conflict, then the statute must be given preference over the guidelines. U.S. v. Larionoff, 431 U.S. 864, 873, 97 S.Ct. 2150, 2156, 53 L.Ed.2d 48 (1977) ("A regulation which ... operates to create a rule out of harmony with the statute, is a mere nullity.") The pertinent statute, 49 U.S.C.App. Sec. 1429(a), states, in part: "[If] he determines that safety in air commerce or air transportation and the public interest requires, the Secretary of Transportation may issue an order ... suspending, or revoking, in whole or in part, any type certificate...." In determining whether such a suspension or revocation should be ordered, "[t]he findings of fact by the Board or the Secretary of Transportation, if supported by substantial evidence, shall be conclusive." 49 U.S.C.App. Sec. 1486(e).
 
 
 22
 It is our view that the agency did not abuse its discretion in interpreting the guidelines. ConnAire interprets the guidelines too narrowly. The listing of several instances warranting the suspension of a certificate does not imply that other circumstances never warrant the suspension of a certificate. Under Sec. 201(c)(1) or (2), for example, the agency has the power to revoke certificates from organizations for a general lack of qualification, not simply for deliberate or flagrant violations or falsification of records. Thus, the agency's discretion in taking suspension action against certificate-holders is far greater than stated by ConnAire.
 
 
 23
 As to the agency's use of its discretion, we find that there was more than enough evidence here to show that the agency reasonably could have concluded that ConnAire showed "a lack of capability"; an "unwillingness" to "comply with the principles of air safety"; or abuses that were "detrimental to the public interest." The major evidence against ConnAire is: (1) the fact that pilots, including its president, were flying airplanes for which they did not have the appropriate ratings or certifications; (2) the fact that flight time or duty records were not accurately kept and that ConnAire allowed its pilots to exceed regulatory limits on time in flight and on duty; (3) the flying of jets for which the company did not possess complete operating information; and (4) overall poor record keeping. These violations, as the ALJ found, are serious ones, and are worthy of serious action under a fair interpretation of the guidelines.
 
 
 24
 Finally, ConnAire's attempt to have the decision of the Board reversed must be rejected in light of the fact that any alleged harm caused by the FAA's revocation order was remedied by the ALJ's transformation of the revocation into a suspension. ConnAire wishes to have this court review the propriety of the revocation, when it is the suspension that is under review. The suspension, given the evidence cited by the ALJ, certainly was supported by substantial evidence.
 
 IV
 
 25
 Finally, ConnAire argues that the Board erred when it refused to determine if the agency's actions were taken in accordance with the guidelines. The Board stated: "we agree with the Administrator that the Board's role is not to evaluate the Administrator's enforcement program in terms of the FAA Enforcement Manual (Order 2150.3), and that the Administrator's exercise of discretion in the selection of the type of penalty ... is unreviewable."
 
 
 26
 ConnAire contends that the Board does have the authority, under its general power to hear an appeal, to decide if the FAA has followed its internal guidelines. ConnAire relies heavily on a previous decision of the Board, Administrator v. Montgomery, 3 N.T.S.B. 2150 (1980), in which the Board rejected the agency's contention that the Board did not have the power to pass on the agency's compliance with one of its published policies. The Board held: "The Board's review authority must inherently include the jurisdiction to consider any matter, such as the affirmative defense [the policy] advanced in these cases, which bears directly on the validity of the Administrator's order and on the question of whether that order is required by safety and the public interest." Id. at 2153. The court held that the FAA policy, released in a circular, was binding on the agency, stating: "If the Administrator desires to depart from his published, written policy, his remedy is not to disregard the ARSP [the policy] on an ad hoc basis, but rather to amend the program in a manner that those affected receive adequate notice of the revisions." Id. at 2154. Thus, the Board does have the power to review compliance with internal policies.
 
 
 27
 This case differs from Montgomery. That case involved a circular, deliberately distributed to the relevant public, establishing a policy of encouraging reports on deficiencies in the national aviation system by waiving disciplinary action in some cases of self-disclosure. The agency wished the public to know that it had bound itself to follow this specific policy. The Board in Montgomery relied heavily on this point, stating: "the [policy] is not a general statement of intention or policy; but rather is a system whose components, including the waiver of disciplinary action, are spelled out with a considerable degree of specificity." Ibid.
 
 
 28
 This case, on the other hand, involves a general statement of policy concerning the enforcement of regulations that was meant primarily for internal consumption. The order here, in other words, is a statement of general policy intentions, not, as in Montgomery, of specific limitations on the power of the agency. It is not the Board's role to determine if the agency is following its general policies. While the Board does have the power to review the agency's compliance with its policies in cases where the policies interpreted are relatively specific and of a type that would be relied upon by private parties, this is not the case here. ConnAire is relying on this order only after the fact. For the foregoing reasons, we AFFIRM the decision of the Board.