

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-19-2009

# Steven Ianuzzi v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2654

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Steven Ianuzzi v. Comm Social Security" (2009). *2009 Decisions.* Paper 1852.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1852

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

—————

NO. 08-2654

—————

STEVEN J. IANUZZI
Appellant

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

—————

On Appeal From the United States
District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 3-07-cv-00109)
District Judge:  Hon. William L. Standish

—————

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 2, 2009

BEFORE:  McKEE and STAPLETON, *Circuit Judges*,
and IRENAS,* *District Judge*

(Opinion Filed:   February 19, 2009)

—————

*Hon. Joseph E. Irenas, Senior United States District Judge for the District of New
Jersey, sitting by designation.

David M. Axinn (Argued)
Cohen & Axinn
1904 North Juniata Street
P.O. Box 597
Hollidaysburg, PA 16648
  Attorney for Appellant

Quinn N. Doggett
Social Security Administration
SSA/OGC/Region III
P.O. Box 41777
Philadelphia, PA 19101
  and
Craig Ornsom (Argued)
Social Security Administration
SSA/OGC/Region III
300 Spring Garden Street - 6th Floor
Philadelphia, PA 19123

———————

OPINION OF THE COURT

———————

STAPLETON, Circuit Judge:

Appellant Steven J. Ianuzzi appeals from a summary judgment entered by the District Court in favor of the Commissioner of Social Security. We will reverse and remand.

## I. The Process

Following an evidentiary hearing, the ALJ issued a decision holding that Ianuzzi was not "disabled" for purposes of Social Security disability insurance benefits and

supplemental security income. He concluded that the claimant had the residual functional capacity to perform "medium" exertional level work and, in particular, to perform two of his past jobs – automobile sales representative (classified as light exertional work) and credit manager (classified as sedentary exertional work) – as well as other light and sedentary exertional level work. *See* 20 C.F.R. § 404.1567 Physical exertion requirements. The Appeals Council denied Ianuzzi's request for review, and he commenced this civil action in the District Court.

Ianuzzi insisted before the District Court that the ALJ's decisions were not supported by substantial evidence. The District Court agreed with him that the finding regarding the capacity to do medium exertional level work was not supported by substantial evidence. The Court granted summary judgment, however, because it found substantial evidence to support the ALJ's conclusion with respect to the capacity to perform past employment and other light and sedentary exertional level work.

## II. The Evidence Regarding Debilitating Pain and the Side Effects of Its Treatment

There was an extensive medical record before the ALJ. A substantial segment of that record dealt with the extent of Ianuzzi's physical, exertional limitations. His attack on the Commissioner's decision, however, focuses on the evidence of disabling pain and the consequences of its treatment and, for present purposes, we will limit ourselves to that evidence.

Following a motor vehicle accident, Ianuzzi sought help from his family physician,

3

Dr. John F. Reinhardt, complaining of chronic and constant headache. After an MRI and other diagnostic work, Dr. Reinhardt diagnosed Ianuzzi as having whiplash, headaches and degenerative joint disease and referred him to Dr. James Burke, a brain surgeon, for pain management. Upon examination, Dr. Burke noted that Ianuzzi had radiographic evidence of degenerative disc disease of the cervical spine and appeared to be symptomatic for occipital neuralgia.

Dr. Burke turned the pain management responsibilities over to Dr. John Johnson, an anesthesiologist, on May 31, 2005. Dr. Johnson was Ianuzzi's treating, pain management physician continually from that date through July 20, 2006, when he submitted the report that is relevant here. Dr. Johnson's initial, primary diagnoses were: (1) bilateral occipital neuralgia; (2) myofascial pain; and (3) cervical and lumbar radiculitis. In the course of regular visits during this period, Dr. Johnson treated Ianuzzi with trigger point injections, occipital nerve blocks, cervical epidural steroid injections, and multiple medications. These treatments produced short term relief, but the pain thereafter returned to or near the original levels.

The District Court accurately described Dr. Johnson's July 20, 2006, report as follows:

> In the report, Dr. Johnson indicates that he first saw Plaintiff on May 31, 2005 and that he last saw Plaintiff that day. Dr. Johnson listed Plaintiff's impairments as "occipital headaches 2-3x's day – pain radiates to shoulders, back pain, neck pain." Dr. Johnson noted that Plaintiff's then current treatment included lumbar epidural steroid injections, cervical epidural steroid injections, bilateral occipital nerve blocks, Percocet and Fentanyl

4

patches,[19] and he described Plaintiff's clinical findings as "tenderness in occipital regions bilaterally, tenderness along paraspinal musculature of cervical spine and diffuse tenderness in lumbar spine region." Regarding Plaintiff's prognosis, the legible portion of Dr. Johnson's response indicated that Plaintiff's pain would continue, and that his range of motion and activities would continue to be decreased.

> [19]Fentanyl skin patches should only be used to control moderate to severe chronic (around the clock, long-lasting) pain that cannot be controlled by the use of other pain medications in people who are tolerant (used to the effects of the medication) to narcotic pain medications because they have taken this type of medication for at least one week. Fentanyl skin patches should not be used to treat mild pain, short-term pain, pain after an operation or medical or dental procedure, or pain that can be controlled by medication that is taken as needed. See www.nlm.nih.gov/medlineplus/druginfo (last visited 4/17/2008).

\* \* \*

> Dr. Johnson indicated that Plaintiff was markedly limited in activities of daily living, social functioning, the ability to engage in sustained work and the ability to deal with stress, but that he was unable to evaluate Plaintiff's deficiencies of concentration, episodes of decompensation in work or work-like settings and ability to respond appropriately to co-workers, supervisors or the public.

District Court Opinion at 16-17.

In the ALJ's view, "Dr. Johnson placed severe limitations on the claimant's ability to perform mental work-related activities." Adm. Record at 18.

Dr. Elizabeth Dunmore of the Pennsylvania Bureau of Disability Determination performed a consultive examination of Ianuzzi on January 27, 2006. She reported:

> Since that time he has had problems with chronic migraines, neck and back pain. The back pain is the his [sic] most debilitating problem. The pain starts in his lower back and radiates into the legs. He also experiences pain

5

at the back of his neck.  The pain is constant.  It is 8/10 in severity.
Percocet does help to take the edge off, but then he has problems with
drowsiness.  The pain is worse with the ambulation.  He is especially
bothered with steps.  The patient had worked as a sales manager for
automobile sales.  He discontinue[d] this work in mare [sic] [March] of
2006 because of pain, headaches and inability to concentrate.  He spends his
day resting in a dark room and taking medications.

\* \* \*

IMPRESSION:

1.  Chronic pain syndrome.  The patient presents with a chronic pain
syndrome as outlined above.  He has severe subjective pain with minimal
objective findings.  The pain is chronic in nature and requires narcotic
medications.

Adm. Record at 363; Adm. Record at 365.

## III.  Discussion

We agree with the District Court that the record does not contain substantial

evidence to support the conclusion that Ianuzzi has the residual functional capacity to do

medium exertional level work.  We also agree with the District Court that the ALJ stated

alternative grounds for the denial of benefits to Ianuzzi and that we could affirm that

denial if we found those grounds satisfactory.  Our problem is that while the ALJ stated

alternative grounds, he did so without satisfactorily addressing the substantial conflicting

evidence.  The controlling principle here is the one that we adopted in *Moret v. Karn*, 746

F.2d 989 (3d Cir. 1984), from Professor Davis's preeminent treatise:

> Even if the evidence in the record, combined with the reviewing court's
> understanding of the law, is enough to support the order, the court may not
> uphold the order unless it is sustainable on the agency's findings and for the

6

reasons stated by the agency.

*Id.* at 992 (quoting from K. Davis, Administrative Law Treatise § 14:29 (1980). While we are not prepared to say that the ALJ or the Appeals Council could not state reasons upon which the denial of benefits to Ianuzzi could be sustained, we find no reasoning in the record that we can endorse.

Ianuzzi's primary problem is chronic and substantial pain. Every doctor who has treated him has so concluded and has aggressively treated him for that problem. Finding no evidence to the contrary, we conclude from their diagnoses and the potency of their prescribed treatments that all considered Ianuzzi's pain problem to be a serious and constant one. Dr. Johnson, the treating physician who was responsible for the management of his pain over a substantial period of time and, accordingly, was in the best position to know, in the ALJ's words, "placed severe limitations on the claimant's ability to perform mental work- related activities." Adm. Record at 18.

It was in this context that the ALJ, in finding Ianuzzi able to perform his prior employment, failed to address in any way why these severe limitations were consistent with his serving as an automobile sales representative and a credit manager.

Nor is a satisfactory explanation found elsewhere in the ALJ's opinion. The ALJ did say that he gave "little weight" to Dr. Johnson's assessment of Ianuzzi's pain problem because he was an "anesthesiologist" and "not a mental health specialist and his treatment notes fail to document any mental health issues." The record does not support, however,

7

the notion that an anesthesiologist who practices pain management medicine is unqualified to assess the impact of pain on his or her patient's life activities. Many anesthesiologists do practice pain management medicine, and Ianuzzi was referred to Dr. Johnson precisely for that reason. While Dr. Johnson's treatment notes may fail to document any mental health issues, they most certainly document a serious pain issue.

This is not a case in which the ALJ determined that there was no medically determinable impairment that could reasonably be expected to produce the alleged symptoms. He expressly disavowed such a problem:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

Adm. Record at 17. It thus seems apparent that the ALJ's problem was not with the medical evidence, but rather with the fact that he did not find Ianuzzi "entirely credible." He fails to explain, however, what he found not credible and why.[1]

---

[1]The paragraph that follows this credibility observation states only the following in support:

> On March 28, 2005, the physical therapist reported the claimant stated in his initial interview that he had been in a motor vehicle accident in May, 2003, and had chronic back and cervical pain but did not complain of headaches until "about one month ago. . . ." The physical therapist reported his initial examination disclosed SCM insertional pain at the mastoid processes bilaterally (Exhibit 13F). A patient's report of pain upon such palpitation is generally regarded as a sign that the patient has "extreme sensitivity" or is falsely reporting.

## IV. Conclusion

We will reverse the judgment of the District Court and remand this matter to it with instructions to return it to the Commissioner for further proceedings. The Commissioner may either grant Ianuzzi the benefits claimed or reconsider his application.

---

Adm. Record at 17. This does not support a finding of "falsely reporting" on Ianuzzi's part.