**Stanislaw OPOKA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 95–3552.**

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1996.

Decided Aug. 30, 1996.

Stanley J. Horn, Horn & Villasuso, Chicago, IL, (argued), for Petitioner.

Janet Reno, U.S. Attorney General, Washington, DC, Samuel Der-Yeghiayan, Immigration & Naturalization Service, Chicago, IL, James B. Burns, Office of the United States Attorney, Chicago, IL, William J. Howard, Allen W. Hausman, David M. McConnell, Stephen W. Funk, Lorri L. Shealy, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, Kristal A. Marlow (argued), Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before CUDAHY, KANNE, and DIANE P. WOOD, Circuit Judges.

CUDAHY, Circuit Judge.

Stanislaw Opoka moved the Board of Immigration Appeals (BIA) to reopen his deportation proceedings so that he could move for suspension of deportation. The BIA denied the motion, and Mr. Opoka appeals.

## I.

Stanislaw Opoka, a native and citizen of Poland, entered the United States on October 27, 1987, under a visa admitting him as a nonimmigrant visitor for pleasure. He did not leave the country before the visa expired in April 1988, and in October 1989 the Immigration and Naturalization Service (INS) charged him with deportability. Mr. Opoka, who during that period had married a Polish native and citizen who also overstayed a visitor visa, conceded deportability, but he applied for asylum/withholding of deportation. The petition was denied on April 19, 1990, and Opoka was granted voluntary departure. Opoka appealed. His appeal was dismissed on September 27, 1991, and the BIA granted him thirty days (subject to extensions) for voluntary departure. Opoka failed to leave the United States and, until voluntary departure was reinstated, was in this country in violation of the BIA's orders. Opoka's voluntary departure, however, was reinstated in

March 1993, indicating that the BIA had decided to overlook the violation. After the reinstatement of voluntary departure, he applied for and was granted extensions because of his wife's ill health. Two daughters were born to the couple, the elder on April 25, 1989, and the younger on December 16, 1994.

On March 24, 1995, two days after the date on which his last extension expired, Mr. Opoka filed a motion to reopen his deportation proceedings so that he could apply for suspension of deportation. The BIA denied the motion on September 7, 1995, concluding that Opoka had not established a *prima facie* case because he had not shown that his deportation would result in extreme hardship to himself or to his two United States citizen daughters. Mrs. Opoka, as an illegal resident, was not eligible for consideration. Alternatively, the BIA concluded that even if Mr. Opoka had presented a *prima facie* case it would deny his motion because of his continued failure to depart the country.

After Mr. Opoka's proceedings were concluded by the BIA, Mrs. Opoka was granted a suspension of deportation. Mr. Opoka informs this court that his wife is now a lawful permanent resident of the United States and argues that these changed circumstances support a determination that the BIA erred in declining to find extreme hardship in his case.

## II.

■ The decision to reopen deportation proceedings is committed by federal regulation to the discretion of the Attorney General and the BIA. *INS v. Doherty*, 502 U.S. 314, 322, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992); *see Achacoso–Sanchez v. INS*, 779 F.2d 1260, 1264 (7th Cir.1985). Accordingly, this court reviews the BIA's decision only for abuse of discretion. *Doherty*, 502 U.S. at 323, 112 S.Ct. at 724–25. It will affirm unless the decision "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Guan v. INS*, 49 F.3d 1259, 1261 (7th Cir. 1995) (citations omitted); *Oviawe v. INS*, 853 F.2d 1428, 1430–31 (7th Cir.1988). "That

this court might assign a different weight to the factors considered by the BIA is of no moment, for we may not engage in a plenary review of the record." *Palmer v. INS*, 4 F.3d 482, 490 (7th Cir.1993) (citation and internal citation omitted).

■ Mr. Opoka urges us to consider the changed circumstances of his wife's lawful permanent residence and find that the BIA abused its discretion in refusing to reopen his deportation proceedings; further, at oral argument Mr. Opoka's counsel informed the court that he had recently filed a second motion to reopen, apparently based on the BIA's decision to grant Mrs. Opoka suspension of deportation after it decided Mr. Opoka's case. The government retorts that the decision in Mrs. Opoka's case was not part of the record before the BIA and thus may not be considered on appeal. It asks us to affirm the decision of the BIA about Mr. Opoka without regard to the BIA's subsequent ruling in Mrs. Opoka's case.

■ We recognize that particularly in immigration cases, we are limited to reviewing the evidence that was before the BIA at the time it made its decision. 8 U.S.C. § 1105(a); *Rhoa–Zamora v. INS*, 971 F.2d 26, 34 (7th Cir.1992), *cert. denied*, 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993). This court, however, has the power, in fact the obligation, to take judicial notice of the relevant decisions of courts and administrative agencies, whether made before or after the decision under review. Determinations to be judicially noticed include "'proceeding[s] in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.'" *Philips Medical Sys. Int'l v. Bruetman*, 982 F.2d 211, 215 n. 2 (7th Cir. 1992) (quoting *United States v. Hope*, 906 F.2d 254, 260 n. 1 (7th Cir.1990), *cert. denied*, 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991)); *see also* Fed.R.Evid. 201. Indeed, it is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice. *Green v. Warden, United States Penitentiary*, 699 F.2d 364, 369 (7th Cir.), *cert. denied*, 461 U.S.

960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *United States v. An Undetermined Quantity of an Article of Drug Labeled as Benylin Cough Syrup*, 583 F.2d 942, 946 n. 3 (7th Cir.1978) (per curiam); *see also Papai v. Harbor Tug and Barge Co.*, 67 F.3d 203, 207 n. 5 (9th Cir.1995), *petition for cert. filed*, 64 U.S.L.W. 3709 (U.S. Apr. 9, 1996) (No. 95–1621); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994); *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992). Further, we have previously employed judicial notice in immigration cases, *see, e.g., Kaczmarczyk v. INS*, 933 F.2d 588, 594 n. 4 (7th Cir.), *cert. denied*, 502 U.S. 981, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991), and judicial notice may be taken at any stage of a proceeding, Fed.R.Evid. 201(f).

In *United States v. An Undetermined Quantity of an Article of Drug Labeled as Benylin Cough Syrup*, 583 F.2d at 942, a case involving the forfeiture of cough syrup allegedly unsafe for over-the-counter distribution, the government requested this court to ignore an ALJ's ruling regarding the safety of the defendant property handed down after the district court decided the case. We stated, "the Government asks us to ignore the ALJ's decision because it is not part of the record. Of course it would have been impossible to make the decision part of the record in the district court since it was handed down only nine days before the argument of this appeal. In any event, the decision of an ALJ is a proper subject of judicial notice." *Id.* at 946 n. 3 (citing 10 Moore's Federal Practice § 201.02(1)). Similarly, in this case it would have been impossible for Mr. Opoka to include the results of his wife's case in the administrative record, considering that the decision was not issued until after Mr. Opoka's case was decided.

We emphasize that we are not considering the reasons underlying the BIA's decision to allow Mrs. Opoka to remain in this country, but the simple fact that the decision has been made. The reasons why Mrs. Opoka has been permitted to remain in the United States are not immediately relevant. The fact that she is to remain (presumably with the two citizen children) seems highly relevant to the fate of Mr. Opoka, who apparently is the family breadwinner.[1] We would be derelict in our duty not to recognize a decision indicating these salient facts and circumstances. *See United States v. Jones*, 29 F.3d at 1553 ("[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation."); *Liberty Mutual Ins. Co.*, 969 F.2d at 1388 ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991)). The disposition of Mrs. Opoka's case affects the case before this court, and thus, like the decision regarding the product's safety in the *Benylin* case, it is a proper subject of judicial notice.

## III.

■ Having recognized the fact that Mrs. Opoka is to be permitted to remain in this country legally, we believe that going forward to evaluate the BIA's disposition of Mr. Opoka's case without recognizing the status of his wife would be futile and wasteful of scarce judicial resources. In light of a subsequent decision of the BIA, the case before this court has changed significantly from the case that the BIA decided. Although the ultimate decision whether to reopen deportation proceedings is, of course, within the BIA's discretion, given Mrs. Opoka's changed residence status and Mr. Opoka's recently filed motion to reopen, the BIA may choose to reevaluate its prior decision. Rather than improvidently attempting to review a record that has been significantly impacted by an agency decision, we VACATE the BIA's decision and REMAND it for further proceedings. It should be consolidated with Mr. Opoka's present motion to reopen and reconsidered in light of the BIA's decision in Mrs. Opoka's case. Further, Mr. Opoka is granted a limited stay of deportation pending the BIA's resolution of the consolidated motions. *See Castaneda–Suarez v. INS*, 993 F.2d 142,

---

1. The record reflects that Mr. Opoka is an electrician.

145–46 (7th Cir.1993); *Roque–Carranza v. INS,* 778 F.2d 1373, 1374 (9th Cir.1985).

Vacated and Remanded with instructions.