

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2000

# Furnari v. Warden

Precedential or Non-Precedential:

Docket 99-3701

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Furnari v. Warden" (2000). *2000 Decisions.* Paper 142.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/142

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 10, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 99-3701

CHRISTOPHER FURNARI, Appellant

v.

WARDEN, Allenwood Federal Correctional
Institution; UNITED STATES PAROLE COMMISSION;
M.D. OF PA UNITED STATES ATTORNEY

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 98-cv-00222)
District Judge: Honorable Malcolm Muir

Argued: April 26, 2000

Before: BECKER, Chief Judge, BARRY and BRIGHT,*
Circuit Judges.

(Filed: July 10, 2000)

_____

* Honorable Myron H. Bright, United States Circuit Judge for the Eighth
Circuit, sitting by designation.

STEVEN R. KARTAGENER,
 ESQUIRE (ARGUED)
222 Broadway – Suite 2700
New York, NY 10007

DAVID BREITBART, ESQUIRE
52 Duane Street
New York, NY 10007

Counsel for Appellant

DAVID BARASCH, ESQUIRE
 United States Attorney
THEODORE B. SMITH, III, ESQUIRE
 (ARGUED)
Assistant United States Attorney
DULCE DONOVAN, ESQUIRE
Assistant United States Attorney
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108

SHARON GERVASONI, ESQUIRE
United States Parole Commission
One North Park Building
5550 Friendship Boulevard
Chevy Chase, MD 20815

Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Judge.

This is an appeal by Christopher Furnari from an order of the District Court for the Middle District of Pennsylvania denying his petition for a writ of habeas corpus. The petition challenged the United States Parole Commission's initial determination, affirmed by its National Appeals Board, consigning Furnari to offense Category Eight. Category Eight is the severest category under the parole regulations, and for Furnari the designation means a fifteen-year postponement of parole consideration. Furnari, who at various times was capo and consigliere in the

2

Lucchese crime family, was convicted in 1986 of extortion-based RICO violations and sentenced to a term of 100 years. See United States v. Salerno, 868 F.2d 524, 527-28 (2d Cir. 1989) (appeal from conviction). At issue in the habeas petition is the Commission's determination that there was sufficient evidence to tie Furnari to a number of murders, which automatically led to the Category Eight designation.

While Furnari's habeas petition was pending before the District Court, he supplemented it by filing a copy of an affidavit submitted by a government attorney to the United States District Court in Brooklyn, New York. The affiant declared that the individual on whom the government had principally relied to tie Furnari to the murders had lied in another case and was unreliable. During the same time frame, Furnari had a statutory interim hearing before the Commission, at which he presented the information in the affidavit, but the Commission denied his request for a de novo hearing.

We take judicial notice of the Parole Commission's decision denying Furnari a de novo hearing. Our standard of review of the Parole Commission's determination is extremely deferential. Nevertheless, because the Appeals Board did not make clear in its decision on the interim hearing whether it continued to believe that the discredited witness was credible or otherwise concluded that there was sufficient information from other sources to tie Furnari to murder, we conclude that the Parole Commission abused its discretion by failing to follow its regulation requiring a statement of reasons for denying parole. We conclude that, under the governing statute and regulations, our case law requiring a statement of reasons is properly extended to the explanation of action at an interim hearing in circumstances where significant new information has been presented to the Commission. We will therefore vacate the order of the District Court and remand with instructions to grant Furnari's petition conditionally and order the Parole Commission to provide a new statement of reasons consistent with this decision.

3

I.

Pursuant to the Parole Commission's Guidelines, 28
C.F.R. S 2.20, Subchapter A, S 201, participation in a
murder places a potential parolee in Severity of Offense
Behavior Category Eight, which is the most serious offense
level and requires the service of the longest prison term
prior to parole consideration. At Furnari's initial Parole
Hearing, the Parole Commission concluded that Furnari
was a Category Eight, which means that he has to serve
fifteen more years before his next de novo parole hearing.[1]

The Parole Commission concluded that Furnari had
participated in a murder based on information provided by
Assistant United States Attorney for the Southern District
of New York David Kelley, who stated that three different
people had provided information to the government about
Furnari's involvement in several murders. They were
Anthony "Gaspipe" Casso (a Lucchese family hitman),
Thomas "Tommy Irish" Carew (a Lucchese family associate),
and Alfonse D'Arco (a former acting Lucchese family boss).

Before the hearing, Furnari wrote to the Parole
Commission, urging it to reject any information provided by
Casso because he had not been tested by cross

---

1. The Sentencing Reform Act of 1984 ("SRA"), Pub. L. No. 98-473, Title
II, 98 Stat. 1987 (1984), abolished parole, see  SRA S 218(a)(5), 98 Stat.
2027, 2031, but only for offenses committed after November 1, 1987, see
Sentencing Reform Amendment Act of 1985, Pub. L. No. 99-217, S 4, 99
Stat. 1728. Furnari's offenses occurred prior to November 1, 1987.
Section 235 of the Sentencing Reform Act of 1984 preserves the Parole
Commission and the federal parole statutes for a period of time for
transition to the new system. Section 235(b)(1) provides that 18 U.S.C.
SS 4201-18, which created the Parole Commission and contain the parole
law, "remains in effect for five years after the effective date [of the
Act]."
98 Stat. at 2027, 2032-33. The original five-year transition period would
have expired on October 31, 1992. This section of the SRA has been
amended twice. In 1990, the five-year transition period was extended to
ten years, see Pub. L. No. 101-650, Title III, S 316, 104 Stat. 5115
(1990), to November 1, 1997, see Sentencing Reform Amendments Act of
1985, Pub. L. No. 99-217, S 4, 99 Stat. 1728 (1985). In 1996, the ten-
year period was extended to fifteen years. See  Pub. L. No. 104-232, SS 1-
3, 110 Stat. 3055 (1996). Accordingly, the transition period does not now
expire until October 31, 2002.

examination in any criminal trial. In addition, Furnari requested that the Parole Commission not consider Kelley's letter unless certain FBI 302s (which concern the debriefing of witnesses) for Carew and D'Arco were provided. Furnari also wrote to Kelley asking for the 302 forms. Kelley declined to release the forms on the basis that Furnari had not cited any authority showing that he had a right to them.

At the hearing, Furnari's counsel attacked Casso's credibility. He also argued that D'Arco's statement regarding Furnari's knowledge of murders carried out when he was consigliere was not credible, because D'Arco was in custody from 1983 through 1986 (when Furnari was consigliere) and would have known about Furnari's involvement only through hearsay. Furnari also claimed that there were no murders committed by the family while he was consigliere.

Kelley responded by acknowledging that "most of the information does come from Casso" and by defending Casso, stating that he was and would continue to be viewed as a reliable government witness. Kelley also noted that Furnari had conceded that D'Arco was an expert on the hierarchy and structure of organized crime, and noted that D'Arco had stated that murders committed by Furnari's crew while Furnari was a capo would only have been done with his knowledge and consent. Kelley stated that there were a number of murders by the family both when Furnari was capo and when he was consigliere.

The hearing examiner requested that Kelley submit further information regarding murders by the family, and afforded Furnari's counsel the opportunity to respond to information provided by Kelley. Kelley detailed fourteen murders committed by members of Furnari's crew during the time he was capo and consigliere. At least five of these occurred after he became consigliere. Kelley further represented that D'Arco and two other sources had stated that, immediately before he was convicted, Furnari met with other members of the Lucchese family hierarchy to select successors. According to these sources, the meeting participants decided that Anthony Luongo would pose a threat to the new administration and should be killed.

5

Casso and Vittorio Amuso were reportedly instructed to murder Luongo, and they did.

Furnari argued that the Parole Commission could not consider any of the information because of the government's refusal to release the 302 forms and also because the reported testimony of Carew and D'Arco from other trials did not include statements implicating Furnari in these murders. He contended that the allegation regarding Luongo "had already been dealt with," seemingly referencing Furnari's own statement in a prior submission that Casso undertook to kill Luongo on his own.

The hearing examiner rated Furnari a Category Eight. He recommended that Furnari be required to serve to afifteen-year reconsideration hearing in December 2011, finding that releasing Furnari on parole would depreciate the seriousness of the offense and promote disrespect for the criminal justice system. The National Appeals Board affirmed this decision.

In 1998, Furnari, then an inmate of the Federal Penitentiary at Lewisburg, Pennsylvania, filed a petition for writ of habeas corpus in which he challenged the denial of parole. He asserted that he was denied due process because the Parole Commission, without a rational basis to do so, relied on information that he was involved in murders. The District Court found that, assuming that there is a liberty interest in parole, Furnari was not denied due process because there was a rational basis in the record before the Parole Commission to support its decision, and denied the petition.

On appeal, Furnari supports his argument that Casso was unreliable by describing events that took place after the initial parole decision. In 1997, in an unrelated trial in the Eastern District of New York, the government, through an affidavit filed by Assistant United States Attorney George A. Stamboulidis, took the position that Casso was an unreliable witness and informed opposing counsel and the court that it did not intend to rely on him. The U.S. Attorney's Office then canceled Casso's cooperation agreement. Furnari argues that this information shows that the government knew all along that Casso was unreliable,

6

and that, at all events, it is now incontrovertible both that Casso is not credible and that there is no specific evidence to tie Furnari to any murder.

While this habeas petition was pending before the District Court, Furnari received a two-year, interim review of the original action by the Parole Commission. This review is required by statute. See 18 U.S.C. 4208(h); 28 C.F.R. S 2.14. At that hearing, Furnari's counsel presented all of the new information demonstrating the government's doubts about Casso's reliability. The Parole Commission upheld the original denial of parole, and the Appeals Board affirmed that decision. The Appeals Board expressly denied Furnari's application for a de novo parole hearing to consider the newly discovered information, stating that "[i]n response to your claim that the decision was based on erroneous information, the evidence you have presented does not persuade the Commission that the information it has relied upon is inaccurate. Your request for a de novo hearing is denied." Days later, the District Court denied Furnari's petition.

II.

A.

In a federal habeas corpus proceeding, this Court exercises plenary review of the district court's legal conclusions. See Jones v. Lilly, 37 F.3d 964, 967 (3d Cir. 1994). However, a court's role in reviewing decisions by the Parole Commission on an application for a writ of habeas corpus is limited. The appropriate standard of review of the Commission's findings of fact "is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons." Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976); see also 28 C.F.R. S 2.18 ("The granting of parole to an eligible prisoner rests in the discretion of the United States Parole Commission."). This Court should review, however, whether the Commission "has followed criteria

7

appropriate, rational and consistent" with its enabling statutes so that its "decision is not arbitrary and capricious, nor based on impermissible considerations." Zannino, 531 F.2d at 690. To this end, "the Commission may not base its judgment as to parole on an inaccurate factual predicate." Campbell v. United States Parole Comm'n, 704 F.2d 106, 109 (3d Cir. 1983) (citations omitted).

A parole hearing is not a trial-like adversarial proceeding. The prisoner may be represented at the initial hearing by a person of his choice, see 28 C.F.R. S 2.13(b), but parole hearings are informal, and the rules of evidence do not apply, see Campbell v. United States Parole Comm'n, 704 F.2d 106, 109-10 (3d Cir. 1983) (noting that hearsay evidence is admissible in a parole hearing). The United States Attorney does not bear any burden of proof in such proceeding, see 28 C.F.R. S 2.19(a)(4), (b)(1), and (d), but rather may provide relevant information to the Parole Commission for its use in making the parole decision.

The Commission employs the preponderance of the evidence standard: "If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability." 28 C.F.R. S 2.19(c). Under the parole regulations, a parole applicant is vicariously liable for the criminal activities of associates under the following standard:

> The prisoner is to be held accountable for his own actions and actions done in concert with others; however, the prisoner is not to be held accountable for activities committed by associates over which the prisoner has no control and could not have been reasonably expected to foresee. However, if the prisoner has been convicted of a conspiracy, he must be held accountable for the criminal activities committed by his co-conspirators, provided such activities were committed in furtherance of the conspiracy and

8

subsequent to the date the prisoner joined the conspiracy.

28 C.F.R. S 2.20, Chapt. 13, General Note 4.

Furnari argues that the Parole Commission violated its own procedures and the Due Process Clause of the Fifth Amendment when it relied on the information provided by Kelley in making its initial determination that Furnari was responsible for murder. We do not reach Furnari's constitutional challenges to the initial parole determination, because we take judicial notice of Furnari's submission of Stamboulidis's affidavit to the Parole Commission at the interim hearing and the Commission's failure to provide Furnari a new statement of reasons despite the new information, and we conclude that the Commission failed to comport with 18 U.S.C. S 4206(b) and its regulations at the interim hearing.

B.

Under the applicable Justice Department regulations, an interim hearing is not a de novo determination of the prisoner's presumptive release date but a review of developments subsequent to the Commission's initial determination. See 28 C.F.R. S 2.14(a) ("The purpose of an interim hearing required by 18 U.S.C. S 4208(h) shall be to consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing.").

The affidavit and the decision affirming the determination at the interim hearing are proper subjects for judicial notice. Federal Rule of Evidence 201 authorizes a court to take judicial notice of an adjudicative fact if that fact is "not subject to reasonable dispute." FED. R. EVID. 201(b); see also In re Indian Palms Associates, Ltd., 61 F.3d 197, 205 (3d Cir. 1995) ("Judicial notice may be taken at any stage of the proceeding, including on appeal, as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority.") (citations omitted). The government does not dispute that the affidavit was submitted to the Commission at the interim parole hearing, and we notice it not for the truth of the statements it

contains, but simply for the purpose of determining that new information regarding Casso's credibility was presented to the Parole Commission at the interim hearing. See Indian Palms, 61 F.3d at 205 ("[I]t is not seriously questioned that the filing of documents in the case record provides competent evidence of certain facts––that a specific document was filed, that a party took a certain position, that certain judicial findings, allegations, or admissions were made.") (citations omitted). Similarly, it is proper for this Court to take judicial notice of decisions of an administrative agency, and the decision of the Appeals Board affirming the Parole Commission's decision at interim hearing is such a decision. See Checkosky v. SEC , 139 F.3d 221, 227 (D.C. Cir. 1998) (taking judicial notice of administrative agency decision issued after the decision under review by the court); Opaka v. Immigration & Naturalization Serv., 94 F.3d 392, 395 (7th Cir. 1996) (taking judicial notice of immigration service's decision to suspend deportation to appellant–alien's wife).

Stambouldis's affidavit undeniably represents significant information that, if the Parole Commission were to accept it, would be relevant to the question at the initial hearing whether the Commission correctly determined that Furnari was responsible for murder. The Appeals Board's decision affirming the initial determination that Furnari was a Category Eight credited Casso's information. The Board stated that

> the Parole Commission finds the information from the U.S. Attorney's Office on your personal responsibility for several of the murders (victims Schliefer, Taglianetti, and DeCicco) and attempted murder (victim Abinanti) to be credible and reliable, even though much of the information may have come from Anthony Casso, one of the most violent members of your organization.

This portion of the Statement of Reasons makes clear that the Commission relied in significant part on Casso's information in its initial determination that Furnari was a Category Eight.

The Commission's decision following the interim hearing, however, does not mention the new information about

10

Casso's credibility presented at the interim hearing. The Appeals Board's affirmance of the decision from the interim hearing states that "the evidence you have presented does not persuade the Commission that the information it has relied upon is inaccurate." It is not possible to tell from this decision whether the Parole Commission continues to rely on Casso and find him credible, or has concluded that there is sufficient additional information tying Furnari to murder to conclude that he is a Category Eight even absent the information provided by Casso.

The Commission is required, under 18 U.S.C. S 4206(b), to "state with particularity the reasons" for a denial of parole. See also 28 C.F.R. S 2.13(c) ("At the conclusion of the hearing, the examiner shall discuss the decision to be recommended by the examiner, and the reasons therefor, except in the extraordinary circumstance of a complex issue that requires further deliberation before a recommendation can be made.") (emphasis added). As we have stated,

> We do not find it either overly intrusive or contrary to the statute to require the Commission, which is under a statutory mandate to "state with particularity the reasons for [parole] denial," to truly provide reasons. We believe that a statement of reasons must reveal reasoning, and not simply present conclusions, at least where that reasoning is not apparent from the facts of the case.

Marshall v. Lansing, 839 F.2d 933, 942-43 (3d Cir. 1988). In Marshall, it was not clear from the Commission's statement of reasons how the Parole Commission determined the amount of cocaine to attribute to the prisoner. See id. at 942. We noted that

> Where reasoning beyond simple arithmetic or obvious inferences is required to draw the conclusions upon which the Commission relies, we see no reason why the formal statement of reasons should not provide the crucial missing logic. . . . In this case, a reasonably intelligent person who was familiar with the relevant facts of the case and who had read the Commission's perfunctory explanation would still not have

11

> understood how the Commission reached its
> conclusion.

Id.

This principle extends to the explanation of action at an interim hearing where significant new information is brought to the attention of the Parole Commission. 2 Section 2.14, which provides for an interim hearing, requires that the interim hearing "shall be conducted by an examiner pursuant to the procedures of S 2.13(b), (c), (e), and (f) . . . ." See 28 C.F.R. S 2.14(a)(1). The provisions referenced include the requirement in S 2.13(c) that the examiner discuss "the decision" and "the reasons therefor." In a situation such as this, where the petitioner has presented significant new information to the Commission, the Commission's failure to consider it (or to provide a new statement of reasons for denying parole in light of the new information) is thus a violation of the statute and the regulations. The Commission is not an investigative agency. It reviews information furnished by other government agencies. Thus the Commission may reopen a parole decision for consideration of new information at any time prior to a prisoner's release, even if the new information was in existence, but was not considered, when the initial parole decision was made. See Bridge v. United States Parole Comm'n, 981 F.2d 97, 104 (3d Cir. 1992) (citation omitted). It is our view that, when new information is significant enough to seriously undermine the basis for the initial determination, the Parole Commission must provide a proper statement of reasons when it denies parole following an interim hearing. It cannot continue to rely on the statement of reasons from the initial determination, which no longer can suffice.

As in Marshall, it is not possible to tell how the Appeals Board reached its conclusion following the interim hearing.

---

2. 28 C.F.R. S 2.28(a) provides for the reopening of cases in light of "new information of substantial significance favorable to the prisoner." The government has not argued that S 2.28(a) is the exclusive method by which a prisoner can submit new information to the Parole Commission. Similarly, the government has not argued that the requirement of a statement of reasons does not apply at the interim hearing.

12

The government's own determination that Casso had lied to it about many matters calls into question whether the Parole Commission had a rational basis for its decision to the extent that decision was based on information from Casso. Yet the Appeals Board's statement of reasons affirming the decision at the interim hearing does not explain why the Board continues to categorize Furnari in Offense Category Eight.

The government tries to deal with the insufficiency of the Parole Commission's statement of reasons by detailing all the information that did not come from Casso that was in front of the Parole Commission and tied Furnari to the murders. This information might well meet the standard of providing a rational basis on which to make the classification. But "the statute does not authorize the Commission to develop its reasoning in proceedings before the district court, let alone the court of appeals." Marshall, 839 F.2d at 943. In reviewing an administrative agency's decision, we do not seek out some hypothetical rational support for the agency's action. "A court must review the agency's actual on-the-record reasoning process. Only a formal statement of reasons from the agency can provide this explanation, not a post hoc rationalization, or agency counsel's in-court reasoning." Id. at 943-44 (citing Motor Vehicle Mfrs. Assoc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983)). To the extent that we have, in prior cases, searched the record to find support for the Parole Commission's decision, we have done so only where "the Commission's conclusions were [ ] readily apparent" or "the challenged decisions were based on characterizations by the Commission." Marshall, 839 F.2d at 944. Neither is the case here.

C.

For the foregoing reasons, we conclude that the statement given by the Appeals Board is an insufficient statement of reasons for classifying Furnari as a Category Eight. The Parole Commission thus abused its discretion at the interim hearing by failing to comply with 18 U.S.C. S 4206(b) and 28 C.F.R. SS 2.13 and 2.14, its own regulations requiring a statement of reasons for denying

13

parole. See Moret v. Karn, 746 F.2d 989, 992 (3d Cir. 1984) ("An agency abuses its discretion if it fails to follow its own regulations and procedures."). Accordingly, the District Court's order denying the petition for habeas corpus will be vacated, and the case remanded to the District Court with the direction that it enter a conditional order granting the petition and directing the Parole Commission to provide a new statement of reasons consistent with this opinion, within a period of time that the District Court shall fix. While it may be more efficient for the Commission to simply afford Furnari a de novo hearing thereby obviating the necessity for other proceedings down the road, we leave that decision to the Commission.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit