[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 6, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14629
Non-Argument Calendar

_____

BIA No. A79-506-878

CARLOS JOSE FERNANDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

(June 6, 2005)

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Carlos Jose Fernandez, a Colombian national proceeding through counsel, petitions for review of the Board of Immigration Appeals's ("BIA") order denying his motion to reopen his proceedings in light of his wife's pending removal hearing with an immigration judge ("IJ"). He argues that the BIA abused its discretion by concluding that the outcome of his wife's pending asylum application could never affect his own asylum proceedings. For the reasons stated more fully below, we deny Fernandez's petition.

Fernandez last entered the United States on or about April 3, 2001, as a non-immigrant with authorization to remain no later than October 2, 2001. He filed an application for asylum and withholding of removal signed September 26, 2001. In his application, he sought political asylum indicating that, as a result of his political and social convictions against "communist leftist guerilla groups," he had been persecuted and threatened to the point of having a heart condition, and he feared for his life if returned to Colombia. When asked for information about his spouse, and more specifically, whether his spouse was presently in the United States and to be included in his application for asylum, Fernandez indicated that she would not be included, checking the box marked "other reasons."

Fernandez was then served with a notice to appear on November 15, 2001, charging him with removability for remaining in the United States for a longer time than permitted, INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B). That notice

informed Fernandez that he should bring to his removal hearing any documents or witnesses in support of his case. Fernandez secured counsel and conceded to the allegations and charge of removability. The IJ informed Fernandez that (1) he should submit all documents in support of his asylum application to Immigration Services, (2) was entitled to bring witnesses to testify on his behalf, and (3) he should let his attorney know if he had any witnesses who could come and corroborate his asylum claim.

At the removal hearing, the IJ inquired about the status of Fernandez's wife, and it was clarified that, to the best of Fernandez's counsel's knowledge, his wife had not been issued a notice to appear and her case had not been consolidated and, thus, Fernandez's claim was the only one before the court. Fernandez further testified that his wife had filed for asylum separately. As to the reasons for his political asylum claim, Fernandez's testimony, briefly summarized, was that the FARC[1] had labeled him a "persona non-grata" and had threatened to kill him, "sentencing" him to death because he (1) strongly supported a political party called "New Liberalism" that opposed the FARC's politics and (2) operated a company that worked with the Colombian government to provide electricity throughout the countryside. As to his wife, Fernandez testified that "the threat was against [him]," not his wife, and that his wife, while in Colombia, had only received phone calls

---

[1] Revolutionary Armed Forces of Colombia.

3

that threatened him.

When asked why he had not brought his wife to testify and corroborate his claim, Fernandez responded that he thought he was the only one who was supposed to come to the hearing and that he didn't know that she could have come. The IJ responded:

> You are too educated, sir, to be telling me that you didn't think they have to be here because you were the only one who had your appointment, sir. . . . [Y]ou're an educated man, and you've had a college degree. You've negotiated contracts with the government. . . . All you [had] to do is read all the material you've received from the Court or the Immigration Service, sir. Your asylum application, your court notices. That all indicates you've got the right to present witnesses and evidence.

The IJ attempted to determine the status of Fernandez's wife's asylum claim, but was unable to do so because Fernandez's wife's alien number was unavailable.

The IJ, in an oral decision, found that Fernandez had failed to show that he was entitled to asylum, withholding of removal, or relief under the United Nations Convention Against Torture. Fernandez appealed the IJ's decision to the BIA, arguing that the evidence he presented at his removal hearing adequately proved that he was persecuted because of his ideology and political involvement. The BIA affirmed the IJ's decision in a per curiam opinion dated March 11, 2004. No petition for review of that decision was filed.

However, on April 6, 2004, Fernandez, through counsel, filed with the BIA a

motion to reopen his proceedings and to stay his deportation pending the outcome of his wife's asylum proceedings before an IJ in Miami, Florida. He argued that his wife had not wished to be included in his application for asylum and, therefore, her claim was not addressed at his proceedings. Instead, his wife's proceedings were administratively closed because Fernandez's claim was pending before the BIA and, after the BIA affirmed Fernandez's order of removal, his wife's case was reopened and included Fernandez. Based on this "new fact," Fernandez argued he was entitled to have his case reopened and his deportation stayed because the disposition of his wife's case could affect his status. The government responded that Fernandez's case was closed, his wife's application had not yet been approved, making any relief speculative at best, and his testimony at the hearing never mentioned that his wife had been targeted by the FARC.

The BIA denied the motion to reopen, finding that there was no suggestion that it had erred by upholding the denial of Fernandez's asylum application, and that there was insufficient evidence that the results of his own case would likely change if the case were reopened and remanded to the IJ for further proceedings. It further noted that any claim of eligibility for derivative asylee status in the event that his wife's asylum application were approved was a matter for him to pursue with the Department of Homeland Security ("DHS"). Fernandez petitions for review of the BIA's denial of his motion to reopen his proceedings.

5

On appeal, Fernandez argues that the BIA committed an abuse of discretion and reversible error by concluding that the outcome of his wife's asylum application could never affect his own case. Relying principally on persuasive authority Opoka v. INS, 94 F.3d 392 (7th Cir. 1996), he argues that his wife's status and her claim were material and significant to the proper consideration of his own application and, therefore, the BIA should have stayed his deportation and granted his motion to reopen the proceedings pending the outcome of his wife's case.

Because Fernandez's removal proceedings commenced after April 1, 1997, the effective date of IIRIRA, this case is governed by the permanent provisions of the INA, as amended by IIRIRA. Gonzalez-Oropeza v. U.S. Attorney Gen., 321 F.3d 1331, 1332 (11th Cir. 2003). This Court will review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted) (transitional rules case).

We review "the BIA's denial of [a petitioner's] motion to reopen his deportation order for abuse of discretion. In this particular area, the BIA's discretion is quite broad." Gbaya v. United States Attorney General, 342 F.3d 1219, 1220 (11th Cir. 2003). Pursuant to 8 C.F.R. § 1003.2(a), "[t]he decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a

motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a).

Furthermore, the BIA shall not grant a motion to reopen unless:

[I]t appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing. Subject to the other requirements and restrictions of this section, and notwithstanding the provisions in § 1001.1(p) of this chapter, a motion to reopen proceedings for consideration or further consideration of an application for relief under section 212©) of the Act (8 U.S.C. § 1182©)) may be granted if the alien demonstrates that he or she was statutorily eligible for such relief prior to the entry of the administratively final order of deportation.

8 C.F.R. § 1003.2(c)(1).

We have held that, "[a]t a minimum, there are at least three independent grounds upon which the Board may deny a motion to reopen: 1) failure to establish a prima facie case; 2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." Najjar, 257 F.3d at 1302.

Here, it cannot be said that the BIA abused its discretion by denying

7

Fernandez's motion to reopen, especially in light of ground (2) above, the failure to introduce evidence that was material and previously unavailable. The ground on which Fernandez relied was that his wife's asylum case was reopened and the disposition of her case might affect his status, making the relief he sought necessary. However, as the BIA pointed out, the evidence presented was insufficient to warrant a finding that the results of his asylum claim were likely to change if his proceedings were reopened. This is because the facts of Fernandez's own asylum claim, the denial of which was upheld and not challenged, were not altered in any way because of his wife's separately pending application. Fernandez specifically testified at his hearing that "the threat was against [him]," not his wife, and that his wife, while in Colombia, had only received phone calls that threatened him. He had ample opportunity to present any or all of the evidence relied upon by his wife in her application for asylum, but he failed to do so and did not even bring her to testify on his behalf at his hearing.

Fernandez's reliance on Opoka is misplaced. In Opoka, the Seventh Circuit vacated and remanded a petitioner's case to the BIA when, after his motion to reopen proceedings had been denied, the petitioner's wife had been granted lawful permanent resident status, a fact the court chose to judicially notice when analyzing the petitioner's argument. Opoka, 94 F.3d at 394-95. The Opoka court, while noting that "the ultimate decision whether to reopen deportation proceedings

8

is, of course, within the BIA's discretion," decided to vacate and remand the BIA's decision with instructions to consolidate the case with a second motion to reopen that the petitioner had filed during the pendency of his instant appeal. Id. at 395.

Significantly, Fernandez's wife in the present case has not been granted asylum or lawful permanent resident status, making Opoka inapposite on its facts. Moreover, as the BIA noted and the government concedes, Fernandez may be eligible for asylum as a derivative should his wife's application be granted, but this course of action must be pursued by Fernandez himself. See INA § 208(b)(3)(A), 8 U.S.C. § 1158(b)(3)(A).[2] Finally, at the time Fernandez filed his motion to reopen with the BIA, his wife had not, and to date has still not, been granted asylum. Thus, there was no reason for the BIA to reopen Fernandez's proceedings in the absence of new and material evidence suggesting that his own personal claim for asylum might now be granted.

As noted above, any and all evidence of persecution that his wife faced on the basis of a shared political opinion or an imputed political opinion existed at the time Fernandez filed his application for asylum and testified at his hearing and, therefore, should have been included either in his application for asylum or

---

[2] "A spouse or child . . . of an alien who is granted asylum under this subsection may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien."  INA § 208(b)(3)(A), 8 U.S.C. § 1158(b)(3)(A).

9

presented at his hearing in the form of testimony or witnesses. Cf. Rios v. Ashcroft, 287 F.3d 895, 900-01 (9th Cir. 2002) (remanding where evidence was presented to the IJ regarding petitioner's persecution on account of brother's and husband's military membership, but the evidence was not properly considered) (persuasive authority);[3] Makonnen v. INS, 44 F.3d 1378, 1385-86 (8th Cir. 1995) (remanding BIA's denial of a motion to reopen in order to adequately develop the record and include a letter constituting newly discovered, material evidence not available to the petitioner at the time of her hearing) (persuasive authority).[4]

For the foregoing reasons, we conclude that the BIA did not abuse its discretion by denying Fernandez's motion to reopen and, therefore, deny his petition for review.

**PETITION DENIED.**

---

[3] Distinguishable here because Fernandez never presented the evidence for consideration.

[4] Distinguishable here because the evidence was at all times available to Fernandez.