# United States Court of Appeals for the Federal Circuit

2008-1152


ADVANCED SOFTWARE DESIGN CORPORATION
and CALIN A. SANDRU,

Plaintiffs-Appellants,

v.


FEDERAL RESERVE BANK OF ST. LOUIS,
FEDERAL RESERVE BANK OF PHILADELPHIA,
FEDERAL RESERVE BANK OF ATLANTA,
and FISERV, INC.,

Defendants-Appellees.


Keith A. Rabenberg, Senniger Powers LLP, of St. Louis, Missouri, argued for plaintiffs-appellants.

William H. Levit, Jr., Godfrey & Kahn, S.C., of Milwaukee, Wisconsin, argued for defendants-appellees.  With him on the brief was Michael B. Apfeld.

Susan L.C. Mitchell, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for amicus curiae. With her on the brief was John J. Fargo, Director. Of counsel on the brief was Stephen T. Middlebrook, Senior Counsel, Financial Management Service, United States Department of the Treasury, of Washington, DC.

Appealed from:  United States District Court for the Eastern District of Missouri

Judge Catherine D. Perry

# United States Court of Appeals for the Federal Circuit

2008-1152

ADVANCED SOFTWARE DESIGN CORPORATION
and CALIN A. SANDRU,

Plaintiffs-Appellants,

v.

FEDERAL RESERVE BANK OF ST. LOUIS,
FEDERAL RESERVE BANK OF PHILADELPHIA,
FEDERAL RESERVE BANK OF ATLANTA,
and FISERV, INC.,

Defendants-Appellees.

Appeal from the United States District Court for the Eastern District of Missouri in Case No. 4:07-CV-185, Judge Catherine D. Perry.

_____

DECIDED: September 30, 2009

_____

Before NEWMAN, PROST and MOORE <u>Circuit Judges.</u>

NEWMAN, <u>Circuit Judge</u>.

Plaintiffs Advanced Software Design Corporation and its founder, Calin A. Sandru, (collectively "Advanced Software") appeal the summary judgment of the United States District Court for the Eastern District of Missouri, dismissing certain counts of

their patent infringement suit on the ground that the acts relevant to this appeal were "by or for the United States" and thus could only be pursued in the Court of Federal Claims under 28 U.S.C. §1498(a).[1]  Final judgment was entered pursuant to Federal Rule of Civil Procedure 54(b).  Because the allegedly infringing activity was for the United States and with its authorization and consent, the dismissal of the relevant counts is affirmed.

## BACKGROUND

Advanced Software brought this suit against Fiserv, Inc. and three regional Federal Reserve Banks, charging them with infringement of three patents owned by Advanced Software relating to a method for detecting fraudulent bank checks.  The patents are U.S. Patent Nos. 6,792,110; 6,549,624; and 6,233,340 ("the Sandru patents").  Issues of the scope, validity, and infringement of these patents were not reached by the district court, and are not before us on this appeal.

The technology charged with infringement is called "seal encoding" technology, whereby certain check identifying data such as the check number, payee, date, and amount payable are encoded, using appropriate software, in a "seal" on the face of the check when the check is printed.  Using software programmed with the encryption system, a bank at which the check is processed after its deposit can decode the seal and compare this decoded information to the information that appears on the check.  Any discrepancy will alert the bank to a possible altered or counterfeited check.  Because the procedure involves both encoding, which takes place when the checks are issued, and decoding and verification, the technology depends upon participation by

---

[1]  Advanced Software Design Corp. v. Fed. Res. Bank of St. Louis, No. 4:07CV185 CDP, 2007 WL 3352365 (E.D. Mo. Nov. 9, 2007).

2008-1152                                          2

both the check issuer and the bank that processes the check after its deposit. As concerns the involvement of the United States, the assertions of infringement arise from use of this system with checks of the United States Treasury.

Before the Treasury adopted the seal encoding system, when a United States check was deposited at a bank of first deposit, it would be transferred to the Reserve Bank of which that bank was a member, and paid from Treasury funds held by that Reserve Bank. The check would then be forwarded to the Treasury, and its Financial Management Service (FMS) would conduct a reconciliation process to identify fraudulent checks. FMS would verify information on the check and, if a discrepancy appeared, FMS would investigate further. The Treasury has up to sixty days to identify an altered or counterfeit check, and receives a refund of any funds that had been transferred to pay a fraudulent check, if identified within this period. Meanwhile the perpetrator will have received the funds from the bank of first deposit, and the system is such that the member bank or the Reserve Bank generally bears the loss. See generally Indorsement and Payment of Checks Drawn on the United States Treasury, 69 Fed. Reg. 17,272, 17,273 (April 1, 2004) (explaining amendments to 31 C.F.R. Part 240 relating to the 60-day period for FMS investigation and reconciliation). Now, with the seal encoding technology, the detection system can detect fraudulent checks promptly at the Reserve Bank, notifying the bank of first deposit to freeze the funds before they are withdrawn by the perpetrator.[2]

The seal encoding technology reached the Treasury by way of employees of

---

[2]    The district court reported that with the seal encoding technology the Federal Reserve Banks caught altered or counterfeit checks of nearly $4 million in 2004, over $28 million in 2005, and over $13 million in the first three months of 2006. Advanced Software, 2007 WL 3352365 at *2.

Reserve Banks who learned of the technology, which was developed by a British company and acquired by Fiserv, Inc. A pilot project based on Treasury checks was conducted by Fiserv and the Philadelphia Reserve Bank, under a contract entered between them in July 2001. The United States was not a party to this contract, although the Treasury participated in the pilot program by printing checks with encoded seals. In reviewing a draft of the contract between the Reserve Bank and Fiserv, the Treasury requested that the following draft recital be modified:

> WHEREAS, the Reserve Bank, acting on behalf of the Financial Management Services ("FMS"), a bureau in the Department of the Treasury ("Treasury"), desires to evaluate the use of certain seal encoding technology.

(Draft contract appended to email from Blake Prichard of the Philadelphia Reserve Bank, to Fiserv, July 26, 2001, at J.A. 273). Treasury requested rewording, as reflected in an email from Mr. Prichard that quoted the following passage from an earlier message from an unnamed Treasury official:

> First paragraph under Background: "acting on behalf of the FMS" . . . since it is a joint project, I wonder if it should be "in conjunction with" or similar wording. My concern is that Procurement has concerns when they think the Fed is simply doing a procurement for us, as opposed to doing a procurement simply as an element of a project they are doing for or with us.

(Email from Blake Prichard to Fiserv, July 31, 2001, at J.A. 284). Accordingly, "on behalf of" was changed to "in conjunction with" in the final contract. The significance of this change was debated in the district court, for the Reserve Banks pressed the defense that they could not be sued for patent infringement because their activity was for the United States. In turn, Advanced Software pointed to deposition testimony of a Treasury official stating that the Treasury does not view the Reserve Banks as its

contractors in connection with arrangements between the Banks and other entities. The official explained:

> When we instruct the Federal Reserve to do something on our behalf and they choose to do a procurement, it is their contract. We will often have conversation with them about what the contract will include, what the contractor will do compared to what the Federal Reserve will do, but the contract is between the Federal Reserve Bank and the vendor. We don't sign off on those contracts. We don't consider them our contractors.

(Dep. of Judith Tillman, Deputy Commissioner of FMS, at J.A. 507, undated in Appendix.)

After the pilot program was successfully completed, further contracts were entered between the Reserve Banks and Fiserv, on terms that included Fiserv's agreement to indemnify the Banks for any patent infringement.

On motion of the defendants, the district court dismissed the infringement claims that were based on U.S. Treasury checks, ruling that the alleged acts of infringement were "for the United States" and could be litigated only in the Court of Federal Claims pursuant to 28 U.S.C. §1498(a). The statute is as follows:

> **28 U.S.C. §1498(a)**. Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . .
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

* * * *

In the district court the United States had moved to intervene and had also moved for summary judgment on the ground that the accused acts of infringement were for the United States. The district court denied these motions of the United States as moot, upon granting the defendants' motion for dismissal on the ground that §1498(a) applied insofar as Treasury checks were concerned.

Advanced Software appeals the dismissal, referring to the government's absence as a party to any contract. Advanced Software points out that the Reserve Banks are private banks and Fiserv is a private corporation, and stated its concern that if this action against these defendants cannot be brought in district court, the asserted infringement involving Treasury checks may be without a remedy. Advanced Software expresses skepticism about whether, despite the district court's belief that the United States is subject to suit under 28 U.S.C. §1498(a), the government might later persuade the Court of Federal Claims otherwise. Advanced Software also states its concern about the time and expense of conducting duplicative trials in different forums, for the district court retained jurisdiction of the counts of the complaint that relate to infringement by other banks and customers of Fiserv not involving Treasury checks.

DISCUSSION

Section §1498(a) was first enacted in 1910, and was subsequently broadened in order to aid the government's procurement efforts during World War I. As the Court explained in Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 345 (1928): "The intention and purpose of Congress in the act of 1918 was to stimulate contractors to furnish what was needed for the war, without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents." This court has

further explained that "[t]he coverage of §1498 should be broad so as not to limit the Government's freedom in procurement by considerations of private patent infringement." TVI Energy Corp. v. United States, 806 F.2d 1057, 1060 (1986).

The statute has the effect of removing the threat of injunction, although it provides for "reasonable and entire compensation" for infringing use. See Motorola, Inc. v. United States, 729 F.2d 765, 768 n.3 (Fed. Cir. 1984) (injunctive relief is unavailable against the United States under §1498); Leesona Corp. v. United States, 599 F.2d 958, 968-69 (Ct. Cl. 1979) (distinguishing recovery permitted under §1498(a) from the patent infringement remedies of Title 35).

As the Court explained in Richmond Screw Anchor, the statute "is more than a waiver of immunity and effects an assumption of liability by the government." 275 U.S. at 344; see also Madey v. Duke Univ., 307 F.3d 1351, 1359 (Fed. Cir. 2002) ("[Section 1498(a)] relieves a third party from patent infringement liability, and it acts as a waiver of sovereign immunity and consent to liability by the United States."). When raised between private parties, reliance on §1498(a) is deemed an affirmative defense. See Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1381 (Fed. Cir. 2002).

Precedent has considered, under various factual situations, the scope and applicability of the phrase "for the United States" in §1498(a). When the alleged infringement is by a non-government entity ("a contractor, a subcontractor, or any person, firm, or corporation"), the statute states that the accused activity is "for the United States" if it is conducted "for the Government" and "with the authorization or consent of the Government." §1498(a) ¶2; see also Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc., 477 F.3d 1361, 1365 (Fed. Cir. 2007) (stating the two criteria for

application of §1498(a) to activity of private parties); <u>Hughes Aircraft Co. v. United States</u>, 534 F.2d 889, 897-98 (Ct. Cl. 1976) (same).

The district court found that these two criteria were met and that the Reserve Banks and Fiserv were acting "for the United States" and with its "authorization and consent," in the sense of §1498(a). Advanced Software argues that the United States is not a party to any contract with any of the defendants relating to this technology, and that during the pilot program and later contracts between the Reserve Banks and Fiserv, the Treasury continued to require that it not be a party to any contract. Advanced Software states that the district court erred in viewing the defendant Reserve Banks as operating "for the United States," as required by §1498(a), for a Treasury official testified that the Reserve Banks cannot make commitments or enter contracts "for the Government."

On this appeal the parties continue to debate the role and responsibility of the government, Advanced Software stressing that throughout the litigation the government did not provide unequivocal authorization or consent, as in the FAR clause prescribed for use in government contracts. We have reviewed the applicability of 28 U.S.C. §1498(a), and agree with the district court that the proper forum is the Court of Federal Claims with respect to infringement based on use of this technology with Treasury checks. The communications from the United States to the Federal Reserve Banks, reinforced by the request by the United States to intervene in the district court and its representations to this court that the accused activities are "for the United States" and with its authorization or consent, established the applicability of §1498(a).

The district court found that the government had not provided an explicit written

"authorization or consent," but recognized that no specific contract or explicit "authorization or consent" clause is required by §1498(a). The district court held that the Treasury's agreement to participate with the Reserve Banks in testing and then in using the Fiserv system and software constituted authorization or consent to use the technology and accept liability for patent infringement if such should be present. The court found that the Treasury "unambiguously communicated that it was consenting to work being done for government benefit. The fact that Treasury was not a party to the contract, or that Fiserv agreed to indemnify the bank against any infringement suit is irrelevant." Advanced Software, 2007 WL 3352365 at *7. Alternatively, the district court found that the government consented "post hoc" by seeking to intervene on the defendants' behalf during this litigation; the court stated that this "seeking of intervention itself (and not the arguments) unambiguously demonstrates that the government authorizes and consents post hoc to any infringement that may have occurred on the government's behalf." Id.

In its appellate brief Advanced Software stresses that the United States had not unequivocally provided "authorization or consent" for the Reserve Banks or Fiserv to act on behalf of the government, because no correspondence from Treasury officials contained the language of authorization or consent that typically accompanies government procurement and because Treasury specifically requested that contracts between the Reserve Banks and Fiserv not state that the contracts were "on behalf of" the United States. The defendant Reserve Banks respond that despite this absence of explicit language, authorization or consent to use the seal encoding technology was achieved by the participation of Treasury in adopting the technology, as reflected

throughout the correspondence between officials at Treasury and at the Reserve Banks. The government, in its brief as <u>amicus curiae</u> on this appeal, points specifically to a letter from Richard Gregg, then Commissioner of Treasury FMS, to the Federal Reserve Bank of St. Louis, which states:

> This letter is to advise you that, as a result of the successful outcome of a pilot test of seal encoding technology, the Financial Management Service intends to establish a Check Fraud project to implement this technology in the production of checks that we issue.

(Letter from R. Gregg, August 18, 2003, at J.A. 195.) The government states that this letter constitutes express "authorization or consent to the Banks to make use of the Fiserv software and seal encoding technology," and that this authorization was confirmed by the testimony of Judith Tillman, Deputy Commissioner of FMS, in her declaration in the district court, which states:

> With the decision to formally implement the check fraud prevention processes developed from the pilot program, FMS authorized and consented to the use of those processes by the Federal Reserve Banks in the processing of U.S. Treasury checks. FMS's authorization and consent was intended to include, and included, the use of Fiserv software in connection with the processing of U.S. Treasury checks.

(Decl. of Judith R. Tillman, March 8, 2007, at J.A. 126-27.) Advanced Software responds that Deputy Commissioner Tillman also testified at deposition that FMS does not authorize the Reserve banks to contract on its behalf, and that this negates authorization. <u>See</u> Tillman Dep., quoted <u>ante</u>. Thus the plaintiffs argue that ambiguity and uncertainty remain.

We agree with the district court that authorization or consent was achieved by Treasury's correspondence with the Reserve Banks, including the Gregg letter cited above, and by the unequivocal statements on behalf of the Treasury concerning their

use of this technology.  See <u>TVI Energy</u>, 806 F.2d at 1060 (authorization and consent can be either express or implied); <u>Hughes Aircraft</u>, 534 F.2d at 901 ("Nor . . . is there any requirement that authorization or consent necessarily appear on the face of a particular contract.  On the contrary, 'authorization or consent' on the part of the Government may be given in many ways other than by letter or other direct form of communication . . . ." (footnote omitted)).

While the United States' motion to intervene in the district court was denied as moot, and the government thus has not appeared as a party to this case, its representations as <u>amicus curiae</u> are fully in accord with the conclusion of the district court.  In moving to participate in oral argument in this appeal, the government stated: "The government would like to participate in oral argument because the government has an interest in preventing any interference with its fiscal agent, the Federal Reserve Banks, in performing work for the government and is in a unique position as principal of the agency relationship to address the authorization or consent issues under 28 U.S.C. §1498.  <u>Richmond Screw Anchor Co. v. United States</u>, 275 U.S. 331, 343 (1928)."  The motions to file a brief and to participate in oral argument were granted, and at oral argument the government unequivocally confirmed its position in the following colloquy:

| Court: | Ms. Mitchell, do you authorize, if it wasn't heretofore authorized, do you do it right now? |
| U.S. Counsel: | Yes, your Honor. |

* * * *

| Court: | Just to make clear, the government is waiving any objection to the "reasonable and entire compensation" if it is found that these patents are infringed? |
| U.S. Counsel: | We will accept liability under 1498, your Honor. |

Oral Arg. 23:44–24:12, Oct. 10, 2008, available at http://oralarguments.cafc.uscourts.gov/mp3/2008-1152.mp3. These statements conform to precedent that holds that when the requirements of §1498(a) are met, it functions not only as a waiver of sovereign immunity but also as consent to liability. See Madey, 307 F.3d at 1359 (section 1498(a) "relieves a third party from patent infringement liability, and it acts as a waiver of sovereign immunity and consent to liability"); see also Richmond Screw Anchor, 275 U.S. at 344 (the statute "is more than a waiver of immunity and effects an assumption of liability by the government"); Bereslavsky v. Esso Standard Oil Co., 175 F.2d 148, 150 (4th Cir. 1949) (§1498 is both a waiver of sovereign immunity and an assumption of liability on the part of the government).

We also affirm the district court's rulings that the Fiserv dealings with the Reserve Banks and their actions with respect to Treasury checks are "for the Government" in the sense required by §1498(a). The district court correctly ruled that §1498(a) does not require that the government be party to any contract, but may apply to activities by "any person, firm, or corporation" for the benefit of the government. 28 U.S.C. §1498(a). For example, in Hughes Aircraft the court found that the government's participation in the Skynet II satellite program was "for the Government" although the satellites would be owned by the United Kingdom, because the program was vital to the military defense and security of the United States. See 534 F.2d at 898.

Advanced Software questions whether the government is "a principal beneficiary" of the accused infringement, since it was not the Treasury, but the bank of first deposit, that almost always bore the loss upon identification of a fraudulent Treasury check. It is

not necessary to be the sole beneficiary, however, in order to be a beneficiary for the purposes of §1498(a). See Sevenson, 477 F.3d at 1365-66 (rejecting notion that §1498(a) imposes a "primary purpose" condition). The defendants point to the national interest in averting fraud in Treasury checks, and to the resources Treasury has saved by adopting this efficient technology. See Indorsement and Payment of Checks Drawn on the United States Treasury, 69 Fed. Reg. at 17773 (discussing resources expended to discover and investigate fraudulent Treasury checks). We agree with the district court that these are significant benefits to the United States, along with the financial benefits accruing to the member banks and the Reserve Banks. All benefit from the detection of fraudulent Treasury checks.

Advanced Software directs attention to the fact situations and reasoning in two cases that held that incidental benefit to the government is insufficient to satisfy the requirements of §1498(a). In Riles v. Amerada Hess Corp., 999 F. Supp. 938 (S.D. Tex. 1998), the district court held that royalties paid to the government for off-shore drilling rights under a federal lease were too remote a government benefit to provide a defense to the charge of infringement of a patent for a method of offshore platform installation; the court found that the purpose of the drilling was not "for the Government," but for the private oil driller's profit. Advanced Software also cites Larson v. United States, 26 Cl. Ct. 365 (1992), where the patentee sought application of §1498(a) in order to invoke government liability for private medical providers' use of infringing splints, arguing that the use was "for the Government" because the government reimbursed the cost through Medicare and other federal programs. The Court of Federal Claims rejected this reasoning, holding that "[a]ny use of plaintiffs' casts and

splints was for the benefit and convenience of the patient and provider, with no benefit to the government. The fact that the government has an interest in the program generally, or funds or reimburses all or part of its costs, is too remote to make the government the program's beneficiary for the purposes underlying §1498." Id. at 369.

Advanced Software suggests that this case is similar to Riles and Larson in that the private actors—the Reserve Banks and Fiserv—are acting primarily for their own economic benefit although the Treasury may receive some tangential benefits in efficiency or cost-avoidance. The district court was not persuaded, finding that the benefits to the government of using the seal encoding technology on Treasury checks are not incidental effects of private interests. We agree, for the seal encoding technology for Treasury checks requires the Treasury's participation in every encoded Treasury check, as distinguished from Riles and Larson where the government's participation was to receive or pay money but with no relation to the benefits of the technology.

The district court discussed whether the Reserve Banks, in their limited role as "fiscal agents" for the Treasury pursuant to 12 U.S.C. §391, acted in an agency capacity when they entered into the contracts with Fiserv. Advanced Software pointed out that the Treasury had requested that the Reserve Banks in their contracts with Fiserv avoid stating that the subject activity was "on behalf of" the Treasury, thereby apparently negating any intent to authorize acts of an agent. Advanced Software also pointed out that 12 U.S.C. §391 provides that the Reserve Banks serve as fiscal agents for the Treasury only for specified limited purposes, and that this statute does not grant the

Reserve Banks power to enter procurement contracts on behalf of the Treasury.[3] However, we need not resolve this issue, for an agency relationship need not exist in order for §1498(a) to apply.

We discern no error in the district court's ruling that the Reserve Banks acted "for the Government" when they contracted to adopt technology designed to detect fraudulent Treasury checks. The ruling that §1498(a) applies to the counts involving Treasury checks is affirmed.

AFFIRMED

---

[3]     Advanced Software has asked this court to take judicial notice of its bid protest with the Government Accounting Office. We take notice of the proceeding. See, e.g., Opoka v. Immigration & Naturalization Serv., 94 F.3d 392, 394-95 (7th Cir. 1996) ("[I]t is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice."). We state no view on the merits.