**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1740
_____

RICHARD THOMPSON,

Appellant

v.

ADMINISTRATOR NEW JERSEY STATE PRISON
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:18-cv-04569)
District Judge:  Honorable Freda L. Wolfson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 15, 2020

Before:  AMBRO, PORTER and SCIRICA, <u>Circuit Judges</u>

(Opinion filed:  December 18, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

While serving a federal prison sentence for an offense he committed as a teenager, Richard Thompson killed a fellow inmate. As a consequence, Thompson was in 1977 convicted of murder and sentenced to life imprisonment, a sentence he has been serving for approximately forty years.[1]

Thompson was denied parole in 1992 and several times thereafter. In 2017, Thompson filed a habeas petition under 28 U.S.C. § 2241 in the District Court challenging on due process grounds his continuing custody. Thompson cited a then-recent decision of the United States Parole Commission (the Commission),[2] which had denied his parole based on these findings:

> You have seriously and frequently violated the rules of the institutions you were confined in over the last 40 years. Specifically, you killed an inmate while at USP Lompoc in 1976, attempted to escape from USP Marion in 1983, stabbed a BOP staff member 17 times in 1983, [were] found guilty of fighting, assault, threatening bodily harm and possession of dangerous weapons. These and many more infractions highlight your inability to comply with the institution's rules and indicate a high probability that you will not follow society's folkways and mores if released. For these reasons, mandatory parole is being denied.

Gov't Suppl. App. (SA) 42.

---

[1] By special arrangement, Thompson—technically a federal inmate in the custody of the Bureau of Prisons—is incarcerated at New Jersey State Prison in Trenton, New Jersey.

[2] The Commission denied parole in August 2016. Just a few months before then, Thompson had been released to a halfway house, seemingly in preparation for parole. It was eventually determined, however, that the foregoing release resulted from a 'miscommunication' between the Commission and the Bureau of Prisons, and Thompson was swiftly returned to prison. See Thompson v. Cushaw, DC Civ. No. 17-cv-2603, 2018 WL 6830867, at *2 (D.D.C. Dec. 28, 2018).

Thompson argued in the District Court that, notwithstanding the Commission's findings, he is entitled to "mandatory parole" pursuant to § 4206(d). Though repealed in 1987, that provision remains applicable to Thompson and other inmates convicted pre-repeal and allows for the possibility of release from a life sentence. See Mitchell v. U.S. Parole Comm'n, 538 F.3d 948, 950 n.2 (8th Cir. 2008). It reads as follows:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however,* That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

18 U.S.C. § 4206(d).

In addition to relying on § 4206(d), Thompson cited a 2006 "Notice of Action" (NOA) in which a parole hearing examiner recommended that, based on Thompson's "criminal history and poor institutional adjustment," he should "continue [] incarceration to [his] mandatory release date." SA 29. Thompson interpreted the examiner's phrasing in 2006 to mean that he should be released now because his "mandatory release date" has come and gone.[3]

---

[3] After Thompson filed the habeas petition at issue here, a hearing examiner recommended that parole be granted. On appeal, however, the executive hearing panel and the Commission disagreed. That development does not render the instant case moot, in light of the specific nature of Thompson's claim and the remedy sought.

The District Court issued an order and opinion denying the habeas petition based on its determination that the 2006 NOA's statement about Thompson's continued incarceration through to his 'mandatory' parole date "does not indicate any binding conclusion that he should or must be released on that date.  Instead, the Commission action represented in that document, and affirmed by the Appeals Board, is the continuation of Thompson's sentence to 'expiration.'" SA 4.  The District Court later issued an order and opinion denying Thompson's motion for reconsideration, reiterating its assessment of the 2006 NOA and also observing that "the fact that the BOP moved Petitioner to a halfway house does not change the Court's decision that he was not entitled to be released on mandatory parole." SA 10.  Thompson timely appealed.

The District Court exercised jurisdiction under the general habeas statute. See 28 U.S.C. § 2241(c)(3).  We have appellate jurisdiction under 28 U.S.C. § 1291 to review both the order denying Thompson's habeas petition and the order denying his motion for reconsideration. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 225 n.6 (3d Cir. 2007).

A federal court's "role in reviewing decisions by the Parole Commission on an application for a writ of habeas corpus is limited." Furnari v. Warden, Allenwood FCI, 218 F.3d 250, 254 (3d Cir. 2000).  The inquiry is generally confined to determining "whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons." Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976).  Insofar as the habeas petition provokes any pure questions of law, though, judicial

review is de novo. See Castro v. DHS, 835 F.3d 422, 429 (3d Cir. 2016).  Review of an order denying reconsideration is for abuse of discretion. See Max's Seafood Café v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999).

On appeal, Thompson's lone argument in his opening brief is that he should be immediately released pursuant to the 2006 NOA.[4]  This argument fails for substantially the reasons given by the District Court below, and for those contained in the decisions of other courts that have reviewed Thompson's parole history. See, e.g., Thompson, supra, 2018 WL 6830867, at *2 ("The exhibits Thompson attached to his reply brief . . . show that the Examiner [in 2006] recommended *against* parole and that Thompson unsuccessfully appealed that decision. * * * Thompson's contrary understanding . . . may have resulted from the Examiner's assertion that Thompson's 'MR/Statutory Release' date was February 3, 2017, even though his 'Full Term Date' was 'Life,' and from arguable ambiguity in whether the Examiner's recommendation to 'Continue to Expiration' was intended to refer to 'expiration' of the 'MR/Statutory Release' date or the 'Full Term Date.'") (internal citation omitted).  In short, the Commission rationally

---

[4] Thompson asserts that the District Court misinterpreted his habeas petition to the extent it discerned from the petition an argument advocating mandatory release under § 4206(d) as a matter of pure statutory interpretation. See Br. at 4.  To the extent Thompson *did* raise such an argument below and now disavows it, the argument is waived. See United States v. Brito, 979 F.3d 185, 189 (3d Cir. 2020).  Regardless, we note our agreement with the District Court that, as a matter of law, release under § 4206(d) is not 'mandatory' based on the passage of time alone, in light of the statutory caveat for incorrigible inmates (i.e., the "*Provided, however*" clause). See Green v. Castillo, 807 F.3d 905, 907 (8th Cir. 2015); Dufur v. U.S. Parole Comm'n, 314 F. Supp. 3d 10, 19 (D.D.C. 2018).

interpreted the 2006 NOA as communicating that Thompson should be incarcerated for the rest of his life.

\* \* \*

We recognize that the Commission based its 2016 parole determination on incidents that occurred in prison thirty-five (or more) years ago, and that Thompson appears to have made many strides in reforming his behavior since then. See, e.g., Reply Br. at 7 (observing that Thompson in 1998 received a "Superior Program Achievement award"). But as far as the Bureau of Prisons and the highest levels of the Commission are concerned, the wounds of Thompson's indisputably heinous deeds during his early years behind bars are so deep that they may never convalesce. It would be hard to fault Thompson, then, for thinking that the prospect of parole from prison is merely illusory.

Regardless, this Court is not in a position to simply substitute its own judgment for that of an executive agency. Cf. Zannino, 531 F.2d at 691. And the Commission's adverse parole decision at issue easily scales the low bar of rational-basis review. Thompson's strained reading of the 2006 NOA was properly rejected by the District Court, both initially and on reconsideration. Accordingly, we will affirm the judgment in this case.